No. 38,988
No. 38,989

MARILYN EISMAN, *Appellee,* v. HUGH MARTIN, also known as High Martin and JOE M. O'FFILL, an individual, doing business as Joe M. O'ffill Motor Company, *Appellants.*

EUGENE V. EISMAN, *Appellee,* v. HUGH MARTIN, also known as High Martin and JOE M. O'FFILL, an individual, doing business as Joe M. O'ffill Motor Company, *Appellants.*

(258 P. 2d 296)

Opinion filed June 6, 1953.

*Henry W. Buck*, of Kansas City, Mo., argued the cause and *John Morrison, Robert Hecker, William B. Cozad,* and *Randolph P. Rogers,* all of Kansas City, Mo., were with him on the briefs for Hugh Martin, appellant; *N. E. Snyder,* of Kansas City, Kan., argued the cause for Joe O'ffill, appellant, and was on the briefs.

*Buford E. Braly,* of Kansas City, Kan., argued the cause for the appellees.

The opinion of the court was delivered by

SMITH, J.: These are actions to recover damages when an automobile driven by plaintiff in one of the cases and in which plaintiff in the other case was a passenger collided with a car being driven by one of the defendants while on business and an agent for the other. The appeal is from an order of the trial court overruling defendants' demurrer to the second amended petition of plaintiff and the third petition of the other.

Plaintiffs in the two cases were husband and wife. Each filed a separate action. On their motion the appeals were consolidated.

We shall for this opinion state the pleadings in the husband's case. He alleged in his amended petition that he was a resident of Kansas City, Kan.; that O'ffill was doing business as the Joe M. O'ffill Motor Company and at the time of the described events Martin was a resident of Missouri and at the time of the filing the amended petition a resident of El Monte, Cal.; that he was absent from Kansas and service could not be had upon him in Kansas and he was a person contemplated by G. S. 1949, 8-401 to 402, as amended, providing for service of summons upon such persons through the secretary of state. The amended petition then described the intersection of the Chelsea Trafficway running east and west and 11th Street running north and south in Kansas City, Kan.; and described a collision plaintiff alleged occurred on March 7, 1952, at about 8:25 p. m. between an automobile being driven by defendant Martin, who was driving an automobile bearing a Kansas license owned by defendant O'ffill and a car being driven by plaintiff in which collision plaintiff suffered permanent injuries. The petition also alleged the defendant Martin was acting as agent of O'ffill and acting and engaged in

defendant O'ffill's business and was acting within the scope of his agency and employment. The amended petition then alleged the collision was caused by the negligence of defendant O'ffill and his agent Martin. Five acts of negligence were set out.

Judgment was prayed against defendants and each of them for $5,000 personal injuries and $429.03 damages to plaintiff's automobile and that the court make an order, as required by G. S. 1949, 8-401 and G. S. 1951 Supp., 8-402, directing process to be served on defendant Martin by serving the secretary of state and by registered mail or personally without the state by the sheriff or deputy sheriff of Los Angeles County, California.

No service was had on Martin except under G. S. 1949, 8-401 and G. S. 1951 Supp., 8-402. Compliance with those sections was had.

Martin appeared specially and moved to quash the service on him. This motion was overruled.

O'ffill moved for an order requiring plaintiff to make his amended petition more definite and certain in several respects, among them being that plaintiff allege the facts on which he based the conclusion that at the time of the collision Martin was acting as the agent and engaged in the business of O'ffill.

Also a motion asking that if any of the pleadings were not made definite and certain, then in the alternative each such allegation be stricken.

The defendant Martin filed an identical motion. The trial court sustained the motion to require plaintiff to make his amended petition more definite and certain in two respects, with which we are not concerned. In the other particulars, the motions were overruled.

Plaintiff filed a second amended petition in which he reiterated the allegation of his amended petition except that he conformed to the order of the court just referred to.

To this second amended petition, Martin demurred on the ground the court had no jurisdiction of his person; no jurisdiction of the subject of the action and the second amended petition did not state facts sufficient to constitute a cause of action. O'ffill demurred to it on the ground it did not state facts sufficient to constitute a cause of action. These demurrers were overruled. Both defendants have appealed.

The specifications of error are that the trial court erred in overruling the demurrer of defendants to the second amended petition because the court had no jurisdiction of the person of Martin or the

subject of the action between plaintiff and Martin since G. S. 1949, 8-401 and G. S. 1951 Supp., 8-402 did not apply to Martin; and if they be construed to apply to him, as they were by the trial court, then they violated section 16 of article 2 of the constitution of Kansas and no facts were alleged upon which to base the conclusion that Martin was the agent of O'ffill at the time and place of the collision and acting within the scope of his employment.

The record in the wife's case was substantially as above.

Two points are raised by Martin. He argues that G. S. 1949, 8-401 and G. S. 1951 Supp. 8-402, did not authorize the service made on him under the circumstances of this case because they only authorized such service on a nonresident of Kansas while such nonresident was operating his own car in Kansas and the second amended petition alleged he was operating O'ffill's car as his agent at the time of the injury; and second if they should be held to apply to him under the circumstances then they violated section 16 of article 2 of the constitution of the state.

Martin and O'ffill joined in the preparation of their briefs, even though each relies on a different point.

We shall first consider Martin's argument. He bases his argument that the trial court had no jurisdiction of his person on a construction of G. S. 1949, 8-401 and G. S. 1951 Supp. 8-402. It is alleged Martin was a nonresident of Kansas when the cause of action arose and when the action was begun that the collision happened while Martin was operating an automobile on a Kansas street. Martin's point is that he was not operating his own car but that of O'ffill, whose agent the petition alleged he was. He argues the statute applies only to parties driving their own cars.

The two sections were originally enacted by the legislature of 1935. (See chapter 72, Laws of 1935.) G. S. 1949, 8-402 was amended by chapter 109 of the Laws of 1951. The two sections provide as follows:

"That the acceptance by a nonresident person of the rights and privileges conferred by existing laws to operate motor vehicles on the public highways of the state of Kansas, or the operation by a nonresident person, or his authorized chauffeur, or agent, of a motor vehicle on the said highways, other than under said laws, shall be deemed equivalent to an appointment by such nonresident of the secretary of state of the state of Kansas, or his successor in office, to be his true and lawful agent, upon whom may be served all lawful process in any action or proceeding against said nonresident, growing out of any accident or collision in which said motor vehicle may be involved, while same is operated in the state of Kansas by said nonresident, or by his authorized chauffeur or

agent; and said acceptance or operation of said vehicle shall be a signification of his agreement that any such process against him which is so served on the secretary of state shall be of the same legal force and validity as if served upon him personally within the state." (G. S. 1949, 8-401.)

"The manner of procuring and serving process in any cause, brought pursuant to the preceding section, shall be as follows, to wit: The plaintiff shall file a verified petition in one of the district courts or magistrate courts of the state as established by chapter 20, article 25, General Statutes of 1949, in the county where the cause of action arose or the plaintiff resides, showing a cause of action against the defendant of the class contemplated in section 8-401 of the General Statutes of 1949; and shall further show in said petition, or by affidavit, to the satisfaction of the judge of said court, that the defendant is one of the persons contemplated in section 8-401 of the General Statutes of 1949, and the residence of said defendant, and a description of the car or motor vehicle claimed to have been operated by the said defendant, or his agent, as near as the same can reasonably be ascertained by the plaintiff; and the time, place and nature of such accident, or injury. Upon such showing being made, the judge shall make an order, directing that service of process be made on the defendant as provided in section 8-401 of the Statutes of 1949; and also, that a copy of the process, and petition, and of said order, and a notice that the same have been served upon the secretary of state, pursuant to this act, be delivered to the defendant by registered mail or personally without the state by a sheriff or deputy sheriff in such state. Proof of such service shall be made by affidavit filed in said cause by the person making said service, and service shall be deemed complete thirty days from the date such personal service is made on the defendant. The court in which the action is pending shall, upon affidavit submitted on behalf of the defendant, grant such additional time to answer, or continuances, as shall be reasonably necessary to allow defendant full opportunity to plead and prepare for the trial of the said cause." (G. S. 1951 Supp. 8-402.)

The sections were enacted for the protection of the residents of this state who should be injured by nonresidents, using our highways and would without such a provision escape liability because they would be out of the state before the party injured in Kansas would have time to sue and get service. The problem arose and became a vexatious one with the advent of transcontinental motor traffic as we know it today. A means was provided in the statute for securing service on the operator of the car that had done the damage through the service of summons on the secretary of state. G. S. 1949, 8-401, first makes the application of the act depend upon a nonresident accepting the privilege of using the public highways of Kansas. That is as it should be, a nonresident using our highways is entitled to the protection of all our statutes on the same basis as our own residents. The section then speaks of the operation of a motor vehicle on our highways by a nonresident person. Next

comes the binding provision of the statute where it is provided that the two above acts by a nonresident, that is, accepting the rights and privileges conferred by existing laws to operate motor vehicles on our highways or the operation of a motor vehicle on our highways by a nonresident person should amount to an appointment by such nonresident of our secretary of state to be his agent upon whom could be served any process in an action against the nonresident growing out of any accident or collision in which the motor vehicle being driven by the nonresident might be involved while it was being operated in the state by the nonresident. There is no provision in the section limiting the application to a nonresident who was driving his own car. The second amended petition in this case alleged that Martin was a nonresident; he was operating a motor vehicle on our highways; he had exercised the privilege conferred by existing laws to operate such vehicle; there was an action growing out of a collision in which the car he was operating was involved. The statute apparently was drawn to fit such a case. Martin argues that we have held the act should be strictly construed. We shall not labor that point, but a construction that this statute only applied to those operating their own motor vehicles on our highways would go far beyond a strict construction and would be reading into it a restriction on the clear meaning of the statute that is not there. As we said in *Talbott v. Nibert,* 167 Kan. 138, 206 P. 2d 131—

"The intent of the legislature must be ascertained by a consideration of all material portions of a statute or act and not from isolated portions thereof. (*Rausch v. Hill,* 164 Kan. 505, 508, 190 P. 2d 357.) It is the duty of courts, so far as practicable to reconcile various provisions in order to make them consistent and sensible. (*Iola B. & L. Ass'n v. Allen County Comm'rs,* 152 Kan. 365, 103 P. 2d 788.) Applying these rules of construction the legislative intent seems evident."

If we follow that rule, it is clear the legislature did not intend to place the limitation on G. S. 1949, 8-401, for which the defendant contends. (See *Halverson v. Sonatone Corp.,* 71 S. D. 568, 27 N. W. 2d 596.)

This statute is not as drastic as might first appear. The opportunity for and danger of judgments for damages being obtained by default is guarded against. G. S. 1951 Supp., 8-402, provides that upon the petition making a showing of the circumtsanses necessary to show the applicability of the statute, he must show the residence of the defendant, a description of the motor vehicle and

the time, place and nature of the accident, whereupon the judge shall make an order that service shall be made as provided in G. S. 1949, 8-401, and a copy of the process, the petition and the order directing service and a notice that service had been had on the secretary of state be delivered to the defendant by registered mail or personally by the sheriff or deputy sheriff in the state, of which the defendant is a resident. Thus it will be seen the rights of non-residents have been safeguarded as nearly as possible while making them subject to process from our courts.

The only place where the words "their motor vehicles" appear at all is in the title to the act. (See chapter 72 of the Session Laws of 1935.) That title reads as follows:

"An act providing for suits and service of process against nonresidents in cases arising out of the operation of their motor vehicles within the State of Kansas."

Defendant Martin argues that if we construe the statute so that it applies to nonresidents who are operating cars sent there on our highways we will cause the statute to be in conflict with section 16 of article 2 of the constitution of our state. That section reads as follows:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed."

Martin argues that the above title by use of the words "their motor vehicles" limits the application of the act to nonresidents who are driving motor vehicles of their own. He cites *Putnam v. City of Salina,* 136 Kan. 637, 17 P. 2d 827, where we said:

"It is elementary, of course, that whatever features of the title of an act are wanting in its text may be ignored; and whatever material matter in the act is not fairly indicated by its title is void. In *State, ex rel., v. McCombs,* 129 Kan. 834, 838, 294 Pac. 618, it was said:

" 'The title may be broader than the act itself, but the act may not be broader than the title.' "

We think this construction would be attaching too much importance to the use of the word "their" in the title. It is unreasonable to presume that the legislature intended to so limit the act by the use of the word "their" in the title and did not actually do so in the body of the act. It is more reasonable to presume that the word was put into the title inadvertently. The word "their" is often used to indicate the right to possession as well as title. Its use here could

have and probably did come about because it is common usage to use a possessive pronoun to describe the right a bailee has in a particular item of personal property. Thus had one been speaking of the Nash car being operated on this occasion by Martin, he would have spoken of it as "his" car. We do not hold a statute to be in violation of the constitution unless such clearly appears. In *Rathbone v. Hopper*, 57 Kan. 240, 45 Pac. 610, we said:

"The obvious intention of the Legislature is entitled to great weight in determining the sufficiency of the title. In Woodruff v. Baldwin, 23 Kan. 494, it was held in a similar case to be more just and fair to say that the Legislature used the title in its broadest sense—a sense broad enough to include the subject-matter of the act, rather than to apply the restricted meaning which would to some extent defeat the legislative purpose." The rule is stated in 50 Am. Jur. Statutes 150, Sec. 170, as follows:

"Where there is a doubt whether the subject or object of the act is sufficiently expressed in its title, such doubt should be resolved in favor of the validity of the act. Hence where terms used in a statute are susceptible of more than one meaning, that meaning will be adopted which would render the statute in compliance with the constitutional provision under consideration, rather than one which would cause the statute to be in violation thereof."

When the legislature amended G. S. 1935, 8-402, by the enactment of chapter 109, Laws of 1951, the title did not contain the words "their cars."

We hold G. S. 1949, 8-401 and G. S. 1951 Supp., 8-402, do not violate the provisions of section 16 of article 2 of the constitution of Kansas.

Defendant O'ffill argues that neither the third amended petition of Marilyn Eisman nor the second amended petition of Eugene Eisman state facts sufficient to constitute a cause of action against him. He points out the identical motion allegation in each case as follows:

". . . the defendant, Hugh Martin, who at said time was operating in a southerly direction on said 11th Street, a 4-door Nash sedan 1949 automobile bearing Kansas license No. D-13130, and owned by the defendant Joe M. O'ffill, and who at said time was acting as agent, servant, and employee of, and at said time was engaged in business for the said Joe M. O'ffill, and at said time was acting within the scope of his agency, employment, . . ."

He points out that he in his motion to require plaintiff to make his petition more definite and certain asked that plaintiff be directed to state the facts upon which plaintiff based what O'ffill referred to as such conclusion. He points out that this motion was overruled. He argues the motion was meritorious and should have been sustained and argues that when it was overruled the second amended petition should be given strict construction and when this is done

there was actually no allegation of Martin's being O'ffill's agent and acting in the scope of his employment.

The validity of this argument depends on our holding the motion to make definite and certain was meritorious and should have been sustained. The motion was not meritorious. It called on plaintiff to allege the evidence by which he intended to prove the allegations of the petition. The function of a petition is to advise defendant precisely what plaintiff claims against him. The allegation quoted is not properly referred to as a conclusion. It is an allegation of an ultimate fact. It would not do to require a plaintiff to state in his petition exactly what was the contractual relationship between the agent and his employer. The above quoted portion was a sufficient allegation of Martin's agency. The demurrers of both parties to the amended petitions in both cases were correctly overruled.

The judgment of the trial court is affirmed.

THIELE, J., concurs in the result.