No. 47,070

KANSAS TOBACCO-CANDY DISTRIBUTORS & VENDORS, INC., a Kansas Corporation, On Its Own Behalf and on Behalf of Its Members and All Others Similarly Situated, *Appellant,* v. JAMES T. MC-DONALD, as Director of Revenue of the State of Kansas, or His Successor On and After July 1, 1972, as Director, or Acting Director of Taxation of the Division of Revenue of the Department of Revenue of the State of Kansas, and v. WALTER H. PEERY, or His Successor as State Treasurer of the State of Kansas, *Appellees.*

(519 P. 2d 1110)

Opinion filed March 2, 1974.

*T. M. Murrell* and *Franklin Corrick,* of Topeka, argued the cause, and were on the brief for the appellant.

*Jonathan P. Small,* Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, *William P. Coates, Jr.,* Assistant Attorney General, *William L. Harris, Jr.,* General Counsel, Department of Revenue, and *J. Bruce Gammon,* Counsel, Department of Revenue, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action for an injunction brought by the plaintiff-appellant, Kansas Tobacco and Candy Distributors and Vendors, Inc., on behalf of itself and its members to enjoin James T. McDonald, Director of Revenue, and Walter H. Peery or his Successor as State Treasurer, from enforcing the provisions of the Tobacco Products Act of 1972. (K. S. A. 1972 Supp. 79-3370 through 79-3388.) The plaintiff claims that the act is unconstitutional under both the federal and state constitutions. The trial court rejected the claim of unconstitutionality and denied injunctive relief. Plaintiff has appealed to this court reasserting its

*position that the act is unconstitutional and urging that the trial court committed certain trial errors.*

At the outset it would be helpful to examine the provisions of the statute. The Tobacco Products Act of 1972 was introduced as House bill No. 1116 and was enacted by the 1972 legislature as Chapter 375, Laws of 1972. The title of the act reads as follows:

"An Act relating to tobacco products other than cigarettes; imposing a tax thereon and upon the privilege of engaging in the business of selling and dealing in tobacco products as a distributor in the state of Kansas; defining certain terms; requiring a license and bond of persons engaging in the business of selling and dealing in tobacco products as a distributor; providing for the issuance, suspension and revocation of such licenses; requiring the keeping of certain records and the making of reports; providing for the filing of returns and the payment of taxes imposed under the provisions of this act; providing for the making of refunds or credits; imposing certain penalties and providing for the collection of delinquent interest and taxes; providing for the holding of hearings; authorizing the adoption of rules and regulations by the director of revenue; declaring certain acts to be unlawful and providing penalties for the violation thereof; and providing for the disposition of revenues collected from licenses and taxes required and imposed under the provisions of this act."

The basic subject matter of the act is described in Section 2 which states:

"Sec. 2. A tax is hereby imposed upon the privilege of selling or dealing in tobacco products in this state by any person engaged in business as a distributor thereof, at the rate of ten percent (10%) of the wholesale sales price of such tobacco products. Such tax shall be imposed at the time the distributor (*a*) brings or causes to be brought into this state from without the state tobacco products for sale; (*b*) makes, manufactures, or fabricates tobacco products in this state for sale in this state; or (*c*) ships or transports tobacco products to retailers in this state to be sold by those retailers."

Highly summarized the other sections of the act provide as follows: Section 1 is the definition section. Section 3 imposes a ten percent one-time tax on tobacco products on hand on July 1, 1972, with the tax due-date stated to be July 20, 1972. Section 4 requires each distributor engaged in the business of dealing in tobacco products in the state to obtain a distributor's license. An application form is prescribed. Out-of-state distributors must appoint the secretary of state as agent for service of process. Section 5 requires payment of a $25 annual distributor's license fee and a corporate surety bond to secure payment of all taxes due under the act. Sections 6 and 7 are concerned with the mechanics pertaining to the issuance, expiration, display, suspension and revocation of licenses. Sections 8 and 9 have to do with the keeping

of records and filing of returns pertaining to the sale of tobacco products. Section 10 provides for a refund and credit for taxes paid where tobacco products previously taxed are not sold in the state due to return to the manufacturer or destruction. The remaining sections cover the penalty for failure to file returns, the payment of taxes with interest and penalty, and miscellaneous procedures pertaining to the administration of the act.

The plaintiff's first point on appeal is that the subject matter of the act is not clearly expressed in its title as required by Article 2, Section 16 of the Kansas Constitution which declares in part as follows:

"No bill shall contain more than one subject which shall be clearly expressed in its title. . . ."

Before considering the specific arguments presented we should note that under our decisions an act under consideration is to be given liberal construction, which all doubts resolved in favor of its constitutionality for the purpose of carrying into effect the will of the legislature. (*Westover v. Schaffer,* 205 Kan. 62, 468 P. 2d 251.) The guidelines and principles to be followed in determining the sufficiency of the title of a statute were well summarized in *Westover* and more recently in *Brickell v. Board of Education,* 211 Kan. 905, 508 P. 2d 996. It is not necessary that the title be a synopsis or abstract of the entire act in all its details. It is sufficient if the title indicates clearly, though in general terms, the scope of the act. The purpose of the title is to direct the mind to the contents of a bill or of an act, so that members of the legislature and the public may be fairly informed and not deceived or misled as to what it embraces. We must uphold a legislative enactment if we can reasonably do so.

The plaintiff first contends that the title is defective because of the peculiar wording of the second clause which states in substance that a tax is imposed "upon the privilege of engaging in the business of selling and dealing in tobacco products *as a distributor in the state of Kansas.*" Plaintiff argues that this clause restricts the application of the act only to *resident* distributors whereas sections 1, 2, 3, 4 and 9 make the act applicable to both resident and nonresident distributors. Hence, plaintiff claims, the subject is erroneously expressed in the title. We do not agree. The particular clause of the title referred to does not restrict the application of the statute to resident distributors alone. The title does not dis-

tinguish between resident and nonresident distributors but makes the statute applicable equally to any and all distributors engaged in the tobacco business in the state. Section 1 (d) (K. S. A. 1972 Supp. 79-3370) defines the term "distributors" broadly to include both resident and nonresident distributors. The point is without merit.

Plaintiff next attacks the title because the second clause states that a tax is imposed upon tobacco products *and* upon the privilege of engaging in business as a distributor. It points out that the body of the act taxes only the privilege of doing business and does not tax directly any tobacco products. Hence, it is argued that the title incorrectly states that there is a tax imposed on tobacco products when in fact there is no tax imposed on tobacco products. We believe that the answer to this contention may be found in *Putnam v. City of Salina,* 136 Kan. 637, 17 P. 2d 827, where we stated that whatever features of the title of an act are wanting in its text may be ignored. Under Article 2, Section 16 of the Kansas Constitution, a statute is not void because the title is broader than the act itself. (*State, ex rel., v. McCombs,* 129 Kan. 834, 284 Pac. 618; and *Eisman v. Martin,* 174 Kan. 726, 258 P. 2d 296.)

The plaintiff's third attack upon the title is that the fourth clause of the title requiring a license and bond of distributors does not state with particularity that an annual fixed sum is to be charged for the license or that it is a license for revenue, while under Section 5 of the act, each distributor must pay annually $25 for a license for each place of business at which it proposes to engage in business. Plaintiff has cited no authority which requires that the exact amount of an annual license fee must be stated with specificity in the title. In our judgment plaintiff's position here is overly technical and unreasonable. Furthermore the plaintiff's argument that the $25 license fee is for revenue purposes is clearly without merit. The record makes it clear that the $25 license fee will be paid by only 132 tobacco distributors in Kansas. It would generate a total annual income of $3300. The undisputed evidence presented on behalf of the defendants shows that the estimated cost of administration of the act would be $23,266 per year. Under these circumstances it cannot reasonably be contended that the $25 annual license fee is for revenue purposes rather than a reasonable fee to defer at least part of the cost of administering the act.

The plaintiff's second and third points are concerned with the

propriety of the trial court's admitting into evidence the posttrial deposition of Raymond L. Barkley along with two exhibits attached thereto. This deposition with exhibits was introduced on the issue of whether or not the $25 annual license fee was for revenue purposes or for regulatory purposes. This evidence disclosed that the $25 annual fee would produce a yearly revenue in the amount of $3300 and that the cost of administering the act would be $26,266 per year. As we read the record we think it clear that plaintiff's counsel did not object to the admission of this testimony and that the plaintiff and defendants agreed to the admission of the deposition. Furthermore such evidence was properly admitted as relevant on the issue of whether or not the annual license fee was for revenue purposes. Under the circumstances we find no error on the part of the trial court in admitting this evidence.

The plaintiff next contends that the trial court erred in not finding that the statute was unconstitutional as an unlawful delegation of legislative power to private persons. In support of its position plaintiff reasons as follows: The tobacco manufacturer sets the original wholesale invoice price; this invoice price is the base upon which the ten-percent tax is applied. Since the manufacturer sets the invoice price he has the power to establish the tax base. This constitutes a delegation of legislative power to the manufacturer. We reject the plaintiff's rationale. Tobacco manufacturers have a right to set wholesale prices for their tobacco products. The statute does not make it the function of the director of revenue to set prices for tobacco products. The statute does not delegate to the tobacco manufacturers the power to do anything. Whatever price the manufacturer sets for the distributors to pay for tobacco products is simply the base upon which the ten-percent tax is applied. There is no delegation of legislative power. The argument advanced here could logically be made concerning any type of ad valorem tax. It obviously has no validity.

Plaintiff next raises the point that the application of the privilege tax on tobacco distributors is unequal, discriminatory and lacking in uniformity. Plaintiff takes the position that the impact of the tax falls unequally and not uniformly because some tobacco products which sell for a certain retail price carry a higher manufacturer's invoice price than products which are sold for the same retail price. Plaintiff argues that this is discriminatory. We do not find this to be unreasonable. It is true that the manufacturer's invoice price varies with different tobacco products but we find nothing inherently dis-

criminatory as a result thereof since a uniform tax of ten percent is applied in every case to an established tax base. It has been held that a license tax on the sale of merchandise may constitutionally be based on the wholesale price even though some retailers pay a higher wholesale price than others for the same goods. In *Exchange Drug Co. v. State Tax Commission*, 218 Ala. 115, 117 So. 673, followed in 219 Ala. 701, 122 So. 917, the Supreme Court of Alabama held that perfect equality of taxation is unobtainable and general legislation creating license taxes is not to be condemned because in its application to individuals it involves inequalities, unless it becomes discriminative between individuals of the class taxed and selects some for an exceptional burden. The case involved an Alabama statute which levied a license or privilege tax on persons selling certain tobacco products equal to fifteen percent of the wholesale price. It was argued that the tax was discriminatory and denied equal protection of law to small retail dealers compelled to pay a higher wholesale price for tobacco than persons selling in large quantities. The contention was rejected and the statute was upheld. The United States Supreme Court dismissed the appeal from this decision for want of a substantial federal question. (*Exchange Drug Co. v. Long*, 281 U. S. 693, 74 L. Ed. 1122, 50 S. Ct. 244.) Likewise we find that the Tobacco Products Act now before us does not unconstitutionally discriminate between or against individual tobacco distributors.

The trial court excluded evidence offered by the plaintiff which would have tended to show that since there is no stamp or meter imprint attached to the tobacco product, the payment of the tobacco tax would be avoided on a wide scale. Plaintiff argues that this was error. In this regard we note that Section 3 (79-3371) places upon the first distributor who brings tobacco products into the state for sale the duty to remit the tobacco products tax and that Section 9 (79-3378) further requires a distributor doing business in the state to file a return each month showing the quantity and wholesale sales price of each tobacco product brought into the state or manufactured in the state during the preceding calendar month. The director of revenue should be given an opportunity to enforce the law and collect the tax. We cannot hold it unconstitutional because some persons might seek to avoid its payment. If such were so, it could logically be argued that income taxes are unconstitutional because some persons fail to pay them.

The plaintiff next contends that the trial court erred in rejecting evidence that retail tobacco sellers would probably suffer a loss of business because of the tax. In our judgment such an argument is directed toward the wisdom of the statute, not to its constitutional validity. The trial court did not err in excluding the proffered testimony.

Finally the plaintiff argues that the statute is invalid on the grounds that it discriminates against interstate commerce and the enforcement thereof would constitute an undue burden on interstate commerce. Plaintiff's argument is somewhat obscure. It is true that state and local taxes, of whatever name or nature, which discriminate against interstate commerce are unconstitutional under the commerce clause of the United States Constitution. (*West Point Grocery Co. v. Opelika*, 354 U. S. 390, 1 L. Ed. 2d 1420, 77 S. Ct. 1096.) We do not see, however, how it can be said that the Tobacco Products Act of 1972 discriminates against firms engaged in an interstate business. The privilege tax applies equally to all distributors engaged in the business of selling or dealing in tobacco products in Kansas—to both resident and nonresident distributors. There is no differentiation between purchases made from Kansas manufacturers and purchases made outside Kansas in interstate commerce. All purchases without discrimination are taxed equally at an equal and constant tax rate of ten percent. The tax is imposed either at the time the tobacco distributor brings tobacco products into the state for sale or at the time a local distributor manufactures or fabricates tobacco products in this state for sale in this state. We find no basis for a charge of discrimination against interstate distributors. Furthermore we find nothing in the record to show that distributors of tobacco products in interstate commerce are in any way unduly burdened by the statutory privilege tax imposed.

For the reasons set forth above the judgment of the trial court is affirmed.

SCHROEDER, J., dissenting.