MCLANE WESTERN, INC.,
Plaintiff–Appellant,

v.

DEPARTMENT OF REVENUE of the State of Colorado; and M. Michael Cooke, as the Executive Director of the Department of Revenue of the State of Colorado, Defendants–Appellees.

No. 03CA2471.

Colorado Court of Appeals,
Div. IV.

May 5, 2005.

Certiorari Denied Jan. 9, 2006.

---

Morrison & Foerster LLP, J. Eric Elliff, Thomas H. Steele, Mark E. Medina, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Andrew W. Swain, Special Attorney General, Denver, Colorado, for Defendants–Appellees.

ROY, J.

Plaintiff, McLane Western, Inc., appeals the trial court's summary judgment in favor of defendants, the Department of Revenue of the State of Colorado and M. Michael Cooke, its Executive Director (collectively, the Department). We affirm.

The sole issue presented in this case is whether the excise tax imposed by Colorado

on "the sale, use, consumption, handling, or distribution" of certain tobacco products in the state, § 39–28.5–102, C.R.S.2004, violates the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3. We conclude that it does not.

McLane buys, resells, and ships grocery products throughout the State of Colorado and other western states from its headquarters in Longmont, Colorado. As part of its operations, McLane buys tobacco products other than cigarettes, commonly referred to as "other tobacco products" (OTP), from manufacturers and suppliers and then resells them to its customers, primarily grocery and small convenience stores.

Prior to 1990, as relevant here, McLane purchased OTP directly from the United States Tobacco Company (U.S.T.Co.). U.S.T. Co. manufactured, marketed, and sold its products to unaffiliated distributors.

In 1990, U.S.T. Co. reorganized and formed two wholly-owned subsidiaries, United States Smokeless Tobacco Manufacturing, L.P. (Manufacturing) and United States Smokeless Tobacco Brands, Inc. (Sales). U.S.T. Co. also changed its name to United States Smokeless Tobacco Company (Smokeless Tobacco). After the reorganization, Manufacturing was responsible for manufacturing and packaging the products, and Sales was responsible for marketing and sales.

After Smokeless Tobacco reorganized and renamed itself, McLane purchased OTP from Sales. Sales purchased the OTP from Manufacturing at an invoice price that did not include any discounts or other reductions. Sales then resold the OTP at a higher price to McLane. According to Sales, this higher price reflected its own operating costs, profit margin, and the added value that came from its sales, marketing, distribution, and advertising efforts.

Manufacturing and Sales are located outside of Colorado, and the sale of OTP between them occurred outside of Colorado. McLane orders OTP from Sales, which ships the product to McLane in the state by common carrier. Upon the arrival at McLane's warehouse, McLane inspects and accepts or rejects the product.

McLane seeks refunds pursuant to § 39–28.5–101, et seq., C.R.S.2004, of what it asserts were excess OTP excise taxes paid during various periods between 1990 and 2001. The OTP excise tax rate is twenty percent, which the Department has assessed based on the manufacturer's or supplier's price paid by McLane to Sales.

McLane filed claims with the Department seeking a refund based upon its recalculation of the tax based on the price paid by Sales to Manufacturing, not on the higher price it paid to Sales. Using this recalculation, McLane claims a tax refund in the amount of $10,163,024.33 plus statutory interest. The Department denied the requests, and McLane commenced two actions, which have been consolidated. After agreeing to the material facts, the parties submitted cross-motions for summary judgment. The trial court granted the Department's motion. This appeal followed.

At the outset, we note that the parties have agreed that the price paid by Sales to Manufacturing meets the definition of "manufacturer's list price" as that term is defined by the applicable statute, § 39–28.5–101(3), C.R.S.2004. However, we recognize that in other contexts affiliated entities are considered a single economic entity. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)(affiliated entities cannot conspire for antitrust purposes because they are parts of a single entity); *Sec. Tire & Rubber Co. v. Gates Rubber Co.*, 598 F.2d 962 (5th Cir. 1979) (Robinson–Patman Act price discrimination); *see also United States Tobacco Sales & Mktg. Co. v. State*, 96 Wash.App. 932, 982 P.2d 652 (1999)(price paid by Sales to Manufacturing may not reflect "fair market value" of promotional samples distributed by Sales for the purposes of OTP tax). We are, nonetheless, bound by the agreement of the parties.

Section 39–28.5–102, C.R.S.2004, provides:

(1) There is levied and shall be collected a tax upon the sale, use, consumption, handling, or distribution of all tobacco products in this state at the rate of twenty percent of the manufacturer's list price of

such tobacco products. Such tax shall be imposed at the time the distributor:

 (a) Brings, or causes to be brought, into this state from without the state tobacco products for sale;

 (b) Makes, manufactures, or fabricates tobacco products in this state for sale in this state; or

 (c) Ships or transports tobacco products to retailers in this state to be sold by those retailers.

Section 39–28.5–101(2), C.R.S.2004, defines "distributor" as

every person who first receives tobacco products in this state, every person who sells tobacco products in this state who is primarily liable for the tobacco products tax on such products, and every person who first sells or offers for sale in this state tobacco products imported into this state from any other state or country.

Section 39–28.5–101(3) defines "manufacturer's list price" as "the invoice price for which a manufacturer or supplier sells a tobacco product to a distributor exclusive of any discount or other reduction."

Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue for trial as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Bedard v. Martin,* 100 P.3d 584 (Colo.App.2004). Here, the parties agree that there is no dispute as to any material fact. We review orders granting summary judgment de novo. *Harding v. Heritage Health Prods. Co.,* 98 P.3d 945 (Colo.App.2004).

### I.

It has long been established that the Commerce Clause of the United States Constitution not only grants Congress the authority to regulate commerce among the several states, but also limits the power of the states to discriminate against interstate commerce. *Riverton Produce Co. v. State,* 871 P.2d 1213 (Colo.1994). This latter limitation on the states is characterized as the "negative" aspect of the Commerce Clause and prohibits "economic protectionism—that is, regulatory

measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Riverton Produce Co. v. State, supra,* 871 P.2d at 1221 (quoting *New Energy Co. v. Limbach,* 486 U.S. 269, 273–74, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988)).

Thus, the United States Supreme Court has "characterized the fundamental command of the [Commerce] Clause as being that 'a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.'" *Assoc. Indus. v. Lohman,* 511 U.S. 641, 647, 114 S.Ct. 1815, 1820, 128 L.Ed.2d 639 (1994)(quoting *Armco Inc. v. Hardesty,* 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540 (1984)). This aspect of the Commerce Clause is frequently referred to as the "dormant Commerce Clause."

■ The dormant Commerce Clause does not, however, "immunize" all interstate commerce and its instrumentalities from state taxation. *Gen. Motors Corp. v. City & County of Denver,* 990 P.2d 59 (Colo.1999). "[A] state tax is not *per se* invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way." *Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981); *see also Riverton Produce Co. v. State, supra; Archer Daniels Midland Co. v. Colorado,* 690 P.2d 177 (1984).

■ A state's right to tax interstate commerce is limited, however, and no tax will be sustained unless it satisfies the four-part test announced by the Supreme Court in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). *Riverton Produce Co. v. State, supra.* Under *Complete Auto,* a state tax that impacts interstate commerce does not violate the dormant Commerce Clause if: (1) the tax is applied to an activity with a substantial nexus with the taxing state; (2) it is fairly apportioned; (3) it does not discriminate against interstate commerce; and (4) it is fairly related to the services provided by the taxing state. *Complete Auto Transit, Inc. v. Brady, supra; Riverton Produce Co. v.*

*State, supra; Talbots, Inc. v. Schwartzberg,* 928 P.2d 822 (Colo.App.1996).

 Here, McLane alleges that the OTP tax statute violates the third prong of the *Complete Auto* test, that is, it discriminates against interstate commerce. McLane argues that, because each layer in the distribution network marks up the price, the tax imposed on the product will be higher the later in that distribution network that one or more of the triggering events listed in § 39–28.5–102 occurs. Thus, the tax-liable distributor must pay the tax on the larger "tax base" created by the collective price mark-ups. There is no dispute that the tax rate remains constant.

For example, if the manufacturer and all the distributors were located within Colorado, the tax base would be at its lowest level. Thus, as McLane argues, and we agree, the location of the manufacturers, suppliers, or distributors involved in the product's distribution network and the price mark-up of each impacts the tax base or the price upon which the constant twenty percent tax rate is imposed. Consequently, McLane asserts, the OTP tax scheme discriminates against interstate commerce by creating an "inexorable pressure" on out-of-state businesses to move into the state to "take advantage of the overall OTP tax benefit." While we agree with McLane's assertions that the tax base will be higher the later in the distribution network the product is taxed, we disagree with McLane's conclusion that this fact renders the tax unconstitutional under the Commerce Clause.

A state tax violates the third prong of the *Complete Auto* test if it is facially discriminatory, has a discriminatory purpose, or has the effect of unduly burdening interstate commerce. *Riverton Produce Co. v. State, supra.* Although McLane argues in this instance that the OTP tax is discriminatory on its face, we conclude that it neither facially discriminates nor has the effect of discriminating against out-of-state competitors.

Our research, and our review of the authorities cited to us, leads us to conclude that a tax is discriminatory if it taxes out-of-state transactions or entities at a rate higher than it taxes in-state transactions, entities, or products, or if it exempts in-state transactions, entities, or products from an otherwise uniform tax. *See generally Fulton Corp. v. Faulkner,* 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996)(tax on a fraction of the value of corporate stock inversely related to the exposure of the corporation to state income tax is unconstitutional); *Assoc. Indus. v. Lohman, supra* (additional state use tax imposed on goods purchased out-of-state discriminates against interstate commerce in those counties in which local sales tax rates are less than the additional state use tax); *Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality,* 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)(difference in rate of surcharge on in-state and out-of-state waste is unconstitutional); *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.,* 505 U.S. 71, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992)(corporate income tax that taxed dividends from foreign subsidiaries but allowed deduction for dividends from domestic subsidiaries without a credit for taxes paid to foreign countries is unconstitutional under the Foreign Commerce Clause, U.S. Const. art. I, § 8); *Am. Trucking Ass'ns v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987) (flat axle tax discriminated against out-of-state truckers because the cost per mile exceeded that of in-state truckers); *Armco Inc. v. Hardesty, supra* (gross receipts tax imposed on businesses selling tangible property at wholesale is unconstitutional because of exemption granted to in-state manufacturers); *Westinghouse Elec. Corp. v. Tully,* 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984)(franchise tax credit lowering the effective tax rate for products shipped from a regular in-state place of business is unconstitutional); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984)(tax on wholesale sales of liquor that exempted locally produced beverage is unconstitutional); *Boston Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977)(stock transfer tax that imposed different tax rates and ceilings depending on residence of seller or place of sale is unconstitutional); *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963)(use tax on custom-made

equipment manufactured out-of-state that included cost of labor and shop overhead in value taxed but excluded labor and shop overhead incurred in manufacturing such equipment in-state is unconstitutional); *see also* 1 Lawrence H. Tribe, *American Constitutional Law* § 6–15 (3d ed.2000)(discussing the implications of many of the cases cited).

In our view, while the tax here is imposed based on the price paid by the taxable distributor, neither Manufacturing or Sales is encouraged to move into the state because they might well become the taxable distributor. The tax is imposed on an activity within the state, the sale and distribution of OTP, not on the product or the distribution network. The fact that the tax base calculated on the price paid by the taxable distributor may place the product at a competitive disadvantage in the marketplace because the higher tax is added to the price does not, in our view, render the tax unconstitutional under the Commerce Clause. All taxable distributors of OTP are taxed at the same rate and on a tax base determined in the same fashion.

McLane's reliance on a line of United States Supreme Court cases finding violations of the Commerce Clause is not persuasive. McLane cites *Armco Inc. v. Hardesty, supra,* where the state imposed a gross receipts tax on businesses selling tangible property at wholesale in the state, but exempted local manufacturers from paying the tax. Thus, the state gave local businesses a direct tax benefit that it did not give to out-of-state competitors. As the Court noted:

> On its face, the gross receipts tax at issue here appears to have just this [discriminatory] effect. The tax provides that two companies selling tangible property at wholesale in [the state] will be treated differently depending on whether the taxpayer conducts manufacturing in the State or out of it. Thus, if the property was manufactured in the State, no tax on the sale is imposed. If the property was manufactured out of the State and imported for sale, a tax of 0.27% is imposed on the sale price.

*Armco Inc. v. Hardesty, supra,* 467 U.S. at 642, 104 S.Ct. at 2622. Because an exemp-

tion to an otherwise uniform tax was granted to in-state companies in *Armco,* that case is not persuasive.

Likewise, in *Halliburton Oil Well Cementing Co. v. Reily, supra,* the taxpayer manufactured or assembled custom oil field equipment in another state. The State of Louisiana imposed a use tax on custom-made equipment manufactured out of, and brought for use into, the state. The value taxed on the out-of-state equipment was the total cost of manufacturing and assembling the equipment, including labor and shop overhead. However, with respect to such equipment manufactured in the state, the value did not include such costs. In addition, second-hand equipment was taxed differently based on whether it was purchased in or out of the state. The Court held the tax unconstitutional because it discriminated against out-of-state businesses and would encourage such businesses to move into the state. *See also Am. Trucking Ass'ns v. Scheiner, supra,* 483 U.S. at 286–87, 107 S.Ct. at 2842.

Here, however, the OTP tax scheme does not pressure out-of-state businesses to move to Colorado. Out-of-state manufacturers or distributors may engage in commerce within Colorado without suffering any burden from which local distributors or manufacturers are exempted.

The remaining cases upon which McLane relies are equally unavailing. None of them involves a determination that a state tax violates the Commerce Clause based on the inequities of a shifting tax base. Rather, they turn on unequal rates of taxation or exemptions from taxation for in-state businesses.

McLane also relies on *United States Tobacco Sales & Marketing Co. v. State, supra,* for the proposition that the price set by Manufacturing establishes the tax base. There, Sales distributed free samples of OTP at promotional events such as rodeos, auto races, and fishing tournaments. The question arose as to whether it should pay the OTP tax and, if so, on what base. Sales argued, as McLane argues here, that the correct tax base was the price it paid to

Manufacturing. The trial court ruled that the correct basis was the price at which Sales sold the product to unaffiliated distributors.

The appellate court reversed, concluding that there were genuine issues of material fact as to the fair market value, rejected both parties' positions with respect to that issue, and remanded the matter for trial. We do not read the case as establishing Manufacturing's price as the appropriate tax basis under the circumstances presented here. There, Sales was the taxable distributor within the meaning of the Washington statute, and the tax base under that circumstance might well be the price it paid to Manufacturing.

Other states considering the constitutionality of similar OTP taxation statutes have upheld them under the Commerce Clause. In *Kansas Tobacco–Candy Distributors & Vendors, Inc. v. McDonald*, 214 Kan. 67, 73, 519 P.2d 1110, 1115 (1974), the court stated:

> We do not see, however, how it can be said that the Tobacco Products Act of 1972 discriminates against firms engaged in an interstate business. The privilege tax applies equally to all distributors engaged in the business of selling or dealing in tobacco products in Kansas—to both resident and nonresident distributors. There is no differentiation between purchases made from Kansas manufacturers and purchases made outside Kansas in interstate commerce. All purchases without discrimination are taxed equally at an equal and constant tax rate of ten percent. The tax is imposed either at the time the tobacco distributor brings tobacco products into the state for sale or at the time a local distributor manufactures or fabricates tobacco products in this state for sale in this state. We find no basis for a charge of discrimination against interstate distributors. Furthermore we find nothing in the record to show that distributors of tobacco products in interstate commerce are in any way unduly burdened by the statutory privilege tax imposed.

Similarly, in *McLane Co. v. Washington State Department of Revenue*, 105 Wash. App. 409, 19 P.3d 1119 (2001), the appellate court found that a similar tax did not violate the Commerce Clause. There, McLane argued that the tax was unconstitutional because it was incurred by merely placing an order. The court disagreed, stating:

> But the tax is not levied on the purchase order. Although the tax is "imposed at the time" a distributor "brings or causes to be brought" tobacco products into Washington for sale under RCW 82.26.020(2), the taxable event is the "sale, use, consumption, handling, or distribution of ... tobacco products." RCW 82.26.020(1)....
> As the Washington Supreme Court has explained, "any wholesaler or any retailer who brings or causes tobacco products to be brought into the state from an out-of-the-state source becomes liable for the tax when such tobacco products are brought into the state." *Galvin v. Tax Comm'n*, 56 Wash.2d 738, 740, 355 P.2d 362 (1960). Thus, the purchase order is not the taxable event and the tax is not upon commerce itself. We hold that the OTP tax is not an unconstitutional tax against interstate commerce.

*McLane Co. v. Wash. State Dep't of Revenue, supra*, 105 Wash.App. at 414–15, 19 P.3d at 1121.

We also note that unsuccessful challenges to a similar OTP tax have been made in Illinois on state constitutional grounds. *Arangold Corp. v. Zehnder*, 204 Ill.2d 142, 272 Ill.Dec. 600, 787 N.E.2d 786 (2003)(due process and uniformity claims; unspecified federal claims abandoned); *Arangold Corp. v. Zehnder*, 187 Ill.2d 341, 240 Ill.Dec. 710, 718 N.E.2d 191 (1999)(single subject provision of state constitution).

Therefore, we conclude that the tax imposed on OTP pursuant to § 39–28.5–101, et seq., does not violate the Commerce Clause of the United States Constitution.

## II.

McLane also argues that the plain language of the term "manufacturer's list price" mandates that the invoice price Sales paid to Manufacturing be the price at which the tax base is set. In so arguing, McLane asserts that the trial court "need not reach the term 'supplier' because the facts established an earlier qualifying sale between a manufactur-

er and a distributor." Thus, McLane argues, "[t]here simply is no reason to move to the second transaction when the first transaction fixes the tax base."

We disagree with McLane's construction of the statute and agree with the trial court that the presence of the term "supplier" in the statutory definition of "manufacturer's list price" necessarily imposes the tax on the price McLane paid to Sales. We cannot ignore the plain language of § 39–28.5–101(3). When construing a statute, we must presume the General Assembly meant what it clearly said and did not use language idly. *In re Marriage of Mugge*, 66 P.3d 207 (Colo.App.2003). Here, McLane purchased the OTP from a supplier, not a manufacturer, of the product. Accordingly, the price that McLane paid Sales is the "manufacturer's list price" for purposes of the statute.

Having so concluded, we need not address McLane's remaining arguments.

The judgment is affirmed.

Judge WEBB and Judge GRAHAM concur.