Jack J. GRYNBERG, d/b/a Grynberg Petroleum Company, and Celeste C. Grynberg, as Trustee on behalf of the Rachel Susan Grynberg Trust, the Stephen Mark Grynberg Trust, and the Miriam Zela Grynberg Trust, Plaintiffs–Appellants,

v.

ARKANSAS OKLAHOMA GAS CORPORATION and Mike Carter, individually and as President of Arkansas Oklahoma Gas Corporation, Defendants–Appellees.

No. 03CA1320.

Colorado Court of Appeals, Division III.

March 24, 2005.

Certiorari Denied Aug. 8, 2005.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado; Law Firm of Michael S. Porter, Michael S. Porter, Wheat Ridge, Colorado; Michael P. Zwiebel, Denver, Colorado, for Plaintiffs–Appellants.

Robinson Waters & O'Dorisio, P.C., Stephen L. Waters, Kimberly A. Bruetsch, Denver, Colorado; Akin Gump Strauss Hauer & Feld, LLP, Jerry E. Rothrock, Washington, D.C., for Defendants–Appellees.

Opinion by: Judge TAUBMAN.

In this case dealing with a working interest and royalty interests in a natural gas well, plaintiffs, Jack and Celeste Grynberg, appeal the trial court's judgment dismissing five of their claims and its grant of summary judgment in favor of defendants, Arkansas Oklahoma Gas Corporation (AOG) and its president, Mike Carter, on their sixth claim. We affirm.

## I. Background

Jack Grynberg owns a 29.84934% working interest in gas production from the Powell C–1 Unit Well in Sequoyah County, Oklahoma. His wife, Celeste Grynberg, holds overriding royalty interests in the same well as trustee for three trusts for their three children.

In 1986, TXO Production Company (TXO), the well operator, entered into a contract with AOG (the TXO contract), whereby TXO agreed to sell AOG its gas production from the Powell C–1 well. The Grynbergs were not parties to this contract.

Shazi Petroleum (Shazi) succeeded TXO as operator of the well. In 1994, Jack Grynberg filed suit against Shazi in Sequoyah County, requesting that an accounting and judgment enter for his interest in the Powell C–1 well (the Shazi case). In 1995, the Oklahoma state court in the Shazi case entered an order directing AOG to pay 29.84934% of any production revenues from the well to Jack Grynberg, as revenues attributable to his undisputed working interest ownership in the Powell C–1 unit well. Although AOG was not a party in the Shazi case, it voluntarily complied with the court's order.

AOG continued to comply with the order from the Shazi case until 1999, when Jack Grynberg filed a qui tam action (the qui tam case) against AOG in *United States ex rel. Jack J. Grynberg v. Arkansas Oklahoma Gas Corp.*, (E.D. Okla. No. CIV–97–409–S, June 1999). Jack Grynberg, as relator on behalf of the United States, alleged that AOG had violated provisions of the federal False Claims Act by understating and underpaying royalties owed to the federal government and Native Americans. Once AOG received notice of the qui tam case, it stopped paying the proceeds from the gas well to the Grynbergs.

Meanwhile, in 1999, Shazi assigned its interests in the well to Stigler Gas Company (Stigler). AOG withheld the proceeds from the well once it stopped paying the Grynbergs in 1999, until it began paying the proceeds to Stigler in April 2001.

The Grynbergs filed the complaint in this case in February 2000, alleging that AOG had unlawfully withheld their revenues from the well. The Grynbergs subsequently amended their complaint to include allegations that AOG had underpaid them for their interest since 1986, the year in which the TXO contract was executed.

In April 2001, AOG filed a declaratory judgment action in Sequoyah County, Oklahoma, against the Grynbergs and Stigler (the Oklahoma case). AOG alleged that pursuant to the TXO contract, it was obligated to pay Stigler, not the Grynbergs, as they alleged in

the present action. AOG also interpleaded the amount in dispute, alleging that it could be exposed to double liability, and it paid into the court the disputed sales proceeds from June 1, 1999, when it stopped paying the Grynbergs, until April 2001, when it filed the declaratory judgment action. In response to AOG's declaratory judgment action, the Grynbergs filed a notice of disclaimer concerning the disputed funds that AOG had deposited with the court.

In March 2002, the court in the Oklahoma case resolved the declaratory judgment claim, concluding that AOG was obligated to pay Stigler pursuant to the TXO contract. The court also determined that the Grynbergs were not a party to the TXO contract, that no implied contract existed between the Grynbergs and AOG, and therefore, that the Grynbergs were not entitled to any payments from AOG with regard to proceeds from the well.

However, the court reserved ruling on the interpleader claim because factual issues remained regarding whether the interpleaded funds represented the correct amount owed by AOG to Stigler under the TXO contract. Additionally, the court reserved ruling to allow the Grynbergs to withdraw their notice of disclaimer and to file any compulsory counterclaim or cross-claim they might have regarding the measurement or value of the interpleaded funds under the TXO contract.

Subsequently, AOG filed a motion to dismiss in this case, alleging that the Grynbergs' claims were barred by collateral estoppel and res judicata because of the court's determination in the Oklahoma case. The trial court granted the motion in May 2002, dismissing the Grynbergs' claims for unjust enrichment, quantum meruit, breach of implied contract, conversion, and civil theft.

In June 2002, the court in the Oklahoma case ruled in the interpleader action that the Grynbergs had withdrawn their notice of disclaimer, but had elected not to file a claim against AOG to contest whether the amount of the interpleaded funds was correct.

In May 2003, the trial court in this Colorado case granted summary judgment in favor of AOG on the Grynbergs' claim of retaliation against a witness.

## II. Collateral Estoppel

■ The Grynbergs contend that the trial court erred in dismissing their five claims noted above based on collateral estoppel or issue preclusion. AOG contends that the Grynbergs are estopped from relitigating the issue of AOG's obligation to pay the Grynbergs because that issue was determined adversely to the Grynbergs in the Oklahoma case. We agree with AOG.

■ The doctrine of collateral estoppel precludes relitigation of an issue that was already litigated and decided in a previous proceeding. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78 (Colo.1999). The following factors must be satisfied to apply the doctrine: (1) the issue precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted was a party in the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1202 (Colo. App.2003).

The Grynbergs do not dispute that the second element of collateral estoppel is satisfied here because they were parties in the Oklahoma case. Therefore, we address only the other elements.

### A. Identical Issue

■ The Grynbergs contend that the issues they raised here were not adjudicated in the Oklahoma case, and therefore, the issues in the two cases are not identical. We disagree.

■ To satisfy the first element of collateral estoppel, the issue to be precluded must be identical to an issue actually litigated and necessarily adjudicated in the prior proceeding. For the issue to have been actually litigated, the parties must have raised it in a prior action. *Bebo Constr. Co., supra.* "A legally raised issue is one that a party, by appropriate pleading, asserts through a claim

or cause of action against the other." *Bebo Constr. Co., supra,* 990 P.2d at 85. Once the issue is properly raised, it must be submitted for determination and actually determined by an adjudicatory body. *Bebo Constr. Co., supra.*

■ Issue preclusion applies to both legal and factual issues. *Carpenter v. Young,* 773 P.2d 561 (Colo.1989). If two cases present different legal issues, but nevertheless involve the same underlying factual issue, collateral estoppel may apply. *See M & M Mgmt. Co. v. Indus. Claim Appeals Office,* 979 P.2d 574 (Colo.App.1998)("identity of issues" test is satisfied where the factual issue is the same, even though the legal issue differs; citing *Rue v. K–Mart Corp.,* 552 Pa. 13, 713 A.2d 82 (1998)); Restatement (Second) of Judgments § 27 (1982)(even though the second action is brought on a different claim, collateral estoppel still applies to preclude relitigation of the issue).

■ Additionally, collateral estoppel applies only to issues that were necessarily adjudicated in the previous action. An issue is necessarily adjudicated when a determination on that issue was necessary to the judgment. *Bebo Constr. Co., supra.*

The Oklahoma court found that all the gas produced by the Powell C–1 well was sold to AOG under the TXO contract and that pursuant to that contract, the payments from the sale were to be made to TXO or its successor. Therefore, whatever AOG owed for its gas purchases was to be paid to Stigler, not the Grynbergs. Therefore, the Grynbergs' assertion that AOG was obligated to pay them is necessarily inconsistent with the Oklahoma court's determination that all the money which AOG owed for its gas purchases was to be paid to Stigler.

Based upon these findings of the Oklahoma court, the trial court in this case found that the Grynbergs were collaterally estopped from asserting their claims of unjust enrichment, quantum meruit, breach of implied contract, conversion, and civil theft.

The Grynbergs argue that these claims are not precluded by collateral estoppel because the Oklahoma court only determined the rights and liabilities of the parties under the TXO contract. However, we conclude that the identical issue litigated in both the Oklahoma case and this case is AOG's obligation to pay the Grynbergs for their interest in the well.

Our conclusion is supported by the fact that the Oklahoma court's decision resolved the factual issue—that AOG had no obligation to pay the Grynbergs—which was necessary to adjudicate the Grynbergs' claims of unjust enrichment, quantum meruit, breach of implied contract, conversion, and civil theft.

■ We also conclude that the Oklahoma court's determination that AOG did not owe the Grynbergs any money was necessary to the determination of the declaratory judgment action. The purpose of a declaratory judgment proceeding is to determine the rights, status, and other legal relations of the parties. *See Citizens Progressive Alliance v. Southwestern Water Conservation Dist.,* 97 P.3d 308 (Colo.App.2004). Thus, the Oklahoma court was required to determine AOG's obligation to the Grynbergs.

Therefore, we conclude that the Oklahoma court considered and determined an issue identical to the issue the Grynbergs had to establish in this case to prevail on these five claims.

## B. Final Judgment

■ The Grynbergs contend that when the court dismissed their claims in this case, the Oklahoma declaratory judgment was not a final order on the merits because the interpleader claim remained unresolved. We disagree.

Under Oklahoma law, "[a]ny determination of rights, status, or other legal relations shall have the force and effect of a final judgment, and it shall be reviewable in the same manner as other judgments." Okla. Stat. tit. 12, § 1654 (2004); *see also City of Chandler v. State ex rel. Dep't of Human Servs.,* 839 P.2d 1352 (Okla.1992)(a determination made by a competent court in an action for declaratory relief is reviewable in the same manner as other judgments); *cf. Carpenter v. Young, supra,* 773 P.2d at 568 (a judgment is final and given preclusive effect if it is " 'suffi-

ciently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and there was an opportunity for review").

When the court in the Oklahoma case ruled on the declaratory judgment claim in March 2002, it titled its ruling "Order Entering Final Judgment on Plaintiff's Declaratory Judgment Claim for Relief." This wording evidenced its intent to enter a final judgment on the merits on the declaratory judgment claim. Furthermore, the only reason the court reserved ruling on the interpleader claim was to determine the correct distribution of the interpleaded funds and to allow the Grynbergs to withdraw their notice of disclaimer and file any claim they might have regarding the accounting of the interpleaded funds.

Accordingly, we conclude that there was a final judgment in the declaratory judgment action sufficient to sustain the third requirement of collateral estoppel.

### C. Full and Fair Opportunity to Litigate

■ The Grynbergs contend they did not have a full and fair opportunity to litigate in the Oklahoma case AOG's obligation to pay them because of the narrow scope of a declaratory judgment action. Specifically, they contend that the remedies in the Oklahoma case were much narrower than those in the present case because in the Oklahoma case, AOG only sought declaratory relief based on the TXO contract. The Grynbergs further assert that the sole purpose of a declaratory judgment action is to determine the rights and duties of the parties, and therefore, the Oklahoma court could not have awarded them damages for AOG's wrongful withholding of payments. We are not persuaded.

■ To determine whether a party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous proceeding, the following factors are considered: (1) whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, (2) whether the party against whom collateral estoppel is asserted had sufficient incentive

to litigate vigorously, and (3) the extent to which the issues are identical. *Bebo Constr. Co., supra.*

■ The first factor requires an inquiry into "whether the initial proceeding was so inadequate or so narrow in focus as to deprive an individual of his or her due process rights should application of the doctrine of collateral estoppel be used to bar relitigation of that issue." *Bebo Constr. Co., supra,* 990 P.2d at 87.

Although the remedies sought in the Oklahoma and Colorado cases were different, both forums provided an opportunity for the Grynbergs to litigate AOG's obligation to pay them for their interest in the well. The record establishes that the Grynbergs actively litigated the Oklahoma case. They participated in discovery and submitted exhibits and witness lists in preparation for trial. Moreover, although AOG's claims in the Oklahoma case were for declaratory judgment and interpleader, the declaratory judgment necessarily determined the Grynbergs' right to payment from AOG.

The Grynbergs also contend that they did not have the same incentive to litigate in the Oklahoma case because of the narrow remedies available.

A party necessarily does not have the same incentive to litigate in the first proceeding if its exposure to liability is substantially less than in the second proceeding. *Salida Sch. Dist. R–32–J v. Morrison,* 732 P.2d 1160 (Colo.1987).

We conclude that the Grynbergs had sufficient incentive to litigate the Oklahoma case. In their brief in support of their motion to dismiss the Oklahoma case, the Grynbergs relied on an Oklahoma statute which provided for dismissal when there is another action pending between the same parties for the same claim. The Grynbergs stated in their brief that in both cases "the underlying issue is identical." That argument shows that the Grynbergs were on notice that the same issue was being litigated in both cases, and therefore, their right to payment from AOG would be determined in both cases. Therefore, they had sufficient incentive vigorously to litigate that claim. *See Antelope Co. v.*

*Mobil Rocky Mountain, Inc.*, 51 P.3d 995, 1003 (Colo.App.2001)(party had full and fair opportunity and sufficient incentive to litigate where counsel for party was present throughout testimony and party admitted that it was "bound" by the ruling in the litigation).

Accordingly, we conclude that the trial court properly applied collateral estoppel against the Grynbergs. Consequently, we need not address the Grynbergs' argument regarding the trial court's application of res judicata as an alternative basis for dismissal.

### III.  Retaliation Against a Witness

■ The Grynbergs contend that the trial court erred in granting AOG's motion for summary judgment on their claim regarding retaliation against a witness. We disagree.

The Grynbergs assert that AOG wrongfully ceased paying them the proceeds from the well once Jack Grynberg filed the qui tam action and that AOG's action was in retaliation against, and intimidation of, Jack Grynberg, a potential witness in the qui tam case. They assert that Jack Grynberg was a potential witness in the qui tam action because he signed the verified complaint and provided depositions under oath to support that action, and therefore, he is eligible for civil damages pursuant to § 18–8–708, C.R.S.2004. AOG argues that this statute applies only to witnesses to, or victims of, a crime. We agree with AOG.

Statutory interpretation is a question of law that we review de novo. *Hendricks v. People*, 10 P.3d 1231 (Colo.2000). A statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts. *Pub. Serv. Co. v. Johnson*, 789 P.2d 487 (Colo.App.1990). In construing a statute, we must ascertain and give effect to the intent of the General Assembly. *In re Marriage of Emerson*, 77 P.3d 923 (Colo.App. 2003). To determine the intent, we look first to the plain and ordinary meaning of the statutory language. If the language is unambiguous, we must apply the statute as written. *In re L.F.*, 56 P.3d 1249 (Colo.App. 2002).

Section 18–8–708 is contained in part seven of the Criminal Code, which is entitled "Victims and Witnesses Protection." Section 18–8–708 provides in relevant part:

(1) The following persons are eligible for relief pursuant to this section:

(a) Any person who testifies as a witness or victim in any official proceeding;

(b) Any person who may be called to testify as a witness to or victim of any crime . . . .

Section 18–8–708(2), C.R.S.2004, provides:

Any person who is eligible pursuant to subsection (1) of this section who suffers any physical injury or property damage as the result of the commission of intimidating a witness or victim *pursuant to section 18–8–704*, aggravated intimidation of a witness or victim *pursuant to section 18–8–705*, or retaliation against a witness or victim *pursuant to section 18–8–706* shall, in a civil proceeding to recover for such injury or property damage, be eligible for the award of treble damages and attorney fees.

(Emphasis added.)

The Grynbergs contend that the phrase "any person who testifies as a witness or victim in any official proceeding" in § 18–8–708(1)(a) encompasses witnesses and victims in any civil action who suffer physical injury or property damage as the result of witness intimidation. However, the provisions of § 18–8–708 must be read together and construed harmoniously. Accordingly, the requirements of § 18–8–708(2) must be satisfied by an individual to be eligible for relief under this section.

As stated above, § 18–8–708(2) requires all individuals eligible under § 18–8–708(1) to have suffered physical injury or property damage as the result of a violation of §§ 18–8–704, 18–8–705, or 18–8–706.

For purposes of this discussion, we assume that the Grynbergs sufficiently alleged "property damage" based on AOG's alleged underpayment or withholding of funds.

Section 18–8–704 provides in part:

A person commits intimidating a witness or victim if, by use of a threat, act of

harassment ... or act of harm or injury to any person or property directed to or committed upon a witness or a victim to *any crime* ... [the person attempts to or does harm or influence the witness or victim in certain ways].

(Emphasis added.) Section 18-8-705 provides a more substantial penalty when the act of intimidation includes aggravated circumstances. Finally, § 18-8-706 provides in part:

An individual commits retaliation against a witness or victim if such person uses a threat, act of harassment ... or act of harm or injury upon any person or property, which action is directed to or committed upon a witness or a victim to *any crime* ... as retaliation against such witness or victim.

(Emphasis added.)

Thus, we agree with the trial court that §§ 18-8-704, 18-8-705, and 18-8-706 require that the individual suffering intimidation be the victim of or witness to a crime.

Further, in *People v. Hickman*, 988 P.2d 628, 645 (Colo.1999), the supreme court, in construing § 18-8-706, observed that "the legislature's intended purpose is to protect people who are or who are thought to be actual or potential witnesses to criminal proceedings." The court also held that the statute applied to one with "the specific intent to retaliate or to seek retribution against a person protected by the statute because of that person's relationship *to a criminal proceeding*" (emphasis added).

Consequently, we conclude that a consistent and harmonious reading of the above statutes requires that to be eligible for civil damages pursuant to § 18-8-708, an individual must be the victim of or a witness to a crime. Therefore, we affirm the trial court's interpretation of the statute and its summary judgment in favor of AOG.

The judgment is affirmed.

Judge VOGT and Judge PICCONE concur.