McLANE WESTERN, INC.,
Plaintiff–Appellant,

v.

DEPARTMENT OF REVENUE, State of Colorado; and Roxy Huber, Executive Director of the Department of Revenue, State of Colorado, Defendants–Appellees.

No. 07CA2497.

Colorado Court of Appeals, Div. VII.

Nov. 26, 2008.

Morrison & Foerster LLP, Thomas H. Steele, J. Eric Elliff, Mark E. Medina, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Carolyn Lievers, First Assistant Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge GRAHAM.

Plaintiff, McLane Western, Inc., appeals the trial court's order dismissing its complaint against defendants, Department of Revenue of the State of Colorado and Roxy Huber, its Executive Director (collectively, the Department). We reverse and remand with directions.

## I. Factual and Procedural Background

A division of this court previously considered an appeal involving a dispute between these parties concerning the same tobacco tax statute, section 39–28.5–102, C.R.S.2008. *See McLane W., Inc. v. Dep't of Revenue,* 126 P.3d 211 (Colo.App.2005) (*McLane I*). However, *McLane I* dealt with different tax years and different constitutional challenges. In *McLane I,* the sole issue was whether the excise tax imposed by Colorado on "the sale, use, consumption, handling, or distribution" of "other tobacco products" (OTP) in the state, pursuant to section 39–28.5–102, violates the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3. In this appeal, McLane challenges section 39–28.5–102 on due process and equal protection grounds.

The relevant statutory scheme prescribed in section 39–28.5–102 provides:

(1) There is levied and shall be collected a tax upon the sale, use, consumption, handling, or distribution of all tobacco products in this state at the rate of twenty percent of the manufacturer's list price of such tobacco products. Such tax shall be imposed at the time the distributor:

(a) Brings, or causes to be brought, into this state from without the state tobacco products for sale;

(b) Makes, manufactures, or fabricates tobacco products in this state for sale in this state; or

(c) Ships or transports tobacco products to retailers in this state to be sold by those retailers.

Section 39–28.5–101(2), C.R.S.2008, defines "distributor" as

every person who first receives tobacco products in this state, every person who sells tobacco products in this state who is primarily liable for the tobacco products tax on such products, and every person who first sells or offers for sale in this state tobacco products imported into this state from any other state or country.

Section 39–28.5–101(3), C.R.S.2008, defines "manufacturer's list price" as "the invoice price for which a manufacturer or supplier sells a tobacco product to a distributor exclusive of any discount or other reduction."

For ease of reference, we now repeat the relevant underlying facts, which are set forth in *McLane I*.

McLane buys, resells, and ships grocery products throughout the State of Colorado and other western states from its headquarters in Longmont, Colorado. As part of its operations, McLane buys OTP from manufacturers and suppliers and then resells them to its customers, primarily grocery and small convenience stores.

Prior to 1990, as relevant here, McLane purchased OTP directly from the United States Tobacco Company (U.S.T.Co.). U.S.T. Co. manufactured, marketed, and sold its products to unaffiliated distributors.

In 1990, U.S.T. Co. reorganized and formed two wholly-owned subsidiaries, United States Smokeless Tobacco Manufacturing, L.P. (Manufacturing) and United States Smokeless Tobacco Brands, Inc. (Sales). U.S.T. Co. also changed its name to United States Smokeless Tobacco Company (Smokeless Tobacco). After the reorganization, Manufacturing was responsible for manufacturing and packaging the products and Sales was responsible for marketing and sales.

After Smokeless Tobacco reorganized and renamed itself, McLane purchased OTP from Sales. Sales purchased the OTP from Manufacturing at an invoice price that did not include any discounts or other reductions. Sales then resold the OTP at a higher price to McLane. According to Sales, this higher price reflected its own operating costs, profit margin, and the added value that came from its sales, marketing, distribution, and advertising efforts.

Manufacturing and Sales are located outside of Colorado, and the sale of OTP between them occurred outside of Colorado. McLane orders OTP from Sales, which ships McLane's product into the state by common carrier. Upon the arrival of the product at McLane's warehouse, McLane inspects and accepts or rejects it.

### A. *McLane I*

McLane sought refunds pursuant to sections 39–28.5–101 to–111, C.R.S.2008, of what it asserted were excess OTP excise taxes paid during various periods between 1990 and 2001. The OTP excise tax rate was twenty percent, which the Department had assessed based on the manufacturer's or supplier's price paid by McLane to Sales.

McLane filed claims with the Department seeking a refund after computing the tax based on the price paid by Sales to Manufacturing, not on the higher price it paid to Sales. Using this recalculation, McLane claimed a tax refund in the amount of $10,163,024.33 plus statutory interest. The Department denied the claims, and McLane commenced two actions, which were consolidated. After agreeing to the material facts, the parties submitted cross-motions for summary judgment. The trial court granted the Department's motion.

On appeal, McLane argued that the OTP tax statute discriminated against interstate commerce. McLane asserted that, because each layer in the distribution network marks up the price, the tax imposed on the product will be higher the later in that distribution network that one or more of the triggering events listed in section 39–28.5–102 occurs. *McLane I,* 126 P.3d at 215. Thus, the tax-liable distributor must pay the tax on the larger "tax base" created by the collective price mark-ups. For example, if the manufacturer and all the distributors were located within Colorado, the tax base would be at its lowest level. Accordingly, the location of the manufacturers, suppliers, or distributors involved in the product's distribution network and the price mark-up of each impacts the tax base or the price upon which the constant twenty percent tax rate is imposed. Consequently, McLane asserted that the OTP tax scheme discriminates against interstate commerce by creating an "inexorable pressure" on out-of-state businesses to move into the state to "take advantage of the overall OTP tax benefit." *Id.*

Although the division agreed with McLane's assertions that the tax base will be higher the later in the distribution network the product is taxed, it disagreed with McLane's conclusion that this fact rendered the tax unconstitutional under the Commerce Clause. *Id.* The division explained,

[W]hile the tax here is imposed based on the price paid by the taxable distributor, neither Manufacturing [n]or Sales is encouraged to move into the state because they might well become the taxable distributor. The tax is imposed on an activity within the state, the sale and distribution of OTP, not on the product or the distribution network. The fact that the tax base calculated on the price paid by the taxable distributor may place the product at a competitive disadvantage in the marketplace because the higher tax is added to the price does not, in our view, render the tax unconstitutional under the Commerce Clause. All taxable distributors of OTP are taxed at the same rate and on a tax base determined in the same fashion.

*Id.* at 216.

The division also concluded that the price that McLane paid to Sales (and not the invoice price Sales paid to Manufacturing) is the "manufacturer's list price" for purposes of the statute, noting that McLane purchased the OTP from a supplier, not a manufacturer, of the product. *Id.* at 218. In so holding, the division rejected McLane's argument that the trial court did not need "to reach the term 'supplier' because the facts established an earlier qualifying sale between a manufacturer and a distributor" and, therefore, there was no reason to move to the second transaction when the first transaction fixed the tax base. *Id.* at 217–18.

The Colorado Supreme Court and the United States Supreme Court denied McLane's petitions for writs of certiorari.

## B. Current Litigation

Before *McLane I* was announced, McLane filed this claim for a refund amount of $5,001,253.94 plus statutory interest for excess OTP excise taxes paid during various periods between January 1, 2002 and December 31, 2004, on the same basis asserted in its requests for refunds in *McLane I*. The Department denied McLane's refund claim based on the holding in *McLane I,* and McLane filed this action in the trial court.

The complaint alleged that the OTP tax statutes, as construed by the *McLane I* division, are unconstitutionally vague and violate McLane's rights under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and article II, section 25, of the Colorado Constitution, as well as under the Equal Protection Clauses of the United States and Colorado Constitutions. McLane alleged that the *McLane I* division's construction of the OTP tax statutes provides no guidance as to which party in the distribution chain is subject to the OTP tax and that the Department may tax similarly situated tax-liable distributors at different points in similar distribution chains, resulting in a nonuniform application of the tax.

Specifically, the complaint averred that, because Sales "performed activities within the State that result in the imposition of the

tax" under section 39–28.5–102, like McLane, Sales was also a "tax-liable distributor" with respect to the sales to McLane, based upon the *McLane I* division's construction of the OTP tax statutes. McLane thus alleged that, because McLane and Sales are both "tax-liable distributors," the Department "could apparently impose the tax at any number of points in a supply chain and the 'manufacturer's list price' as defined in [s]ection 39–28.5–101(3) may be based upon the invoice price, exclusive of any discount or reduction, at which any number of entities may have purchased the OTP."

The Department filed a motion to dismiss the complaint for failure to state a claim for relief, arguing, as relevant here, that under the doctrine of issue preclusion (collateral estoppel), the *McLane I* decision precluded consideration of the issues McLane seeks to raise. The trial court agreed and granted the motion. In analyzing the doctrine's requirement that the issues actually determined in *McLane I* be identical to the issues in this case, the court relied on cases setting forth the requirement of claim preclusion (res judicata) that the determination of "same claim or cause of action" is based on the injury for which relief is demanded, and not on the legal theory on which the person asserting the claim relies. The court thus concluded that, although McLane challenged the OTP statutes on constitutional grounds (due process and equal protection) different from those relied on by the division in *McLane I* (commerce clause), "the injury is unchanged." The court further noted that, because the division in *McLane I* "did not question the vagueness of the OTP tax" and because the "law's essential language has not changed," it "did not find" the OTP statutes vague. This appeal followed.

## II. Standard of Review

■ A motion to dismiss pursuant to C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted tests the formal sufficiency of a plaintiff's complaint. Motions to dismiss are looked upon with disfavor and should not be granted unless it appears beyond a doubt that a plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 385–86 (Colo.2001).

"When reviewing a motion to dismiss under C.R.C.P. 12(b)(5), all averments of material fact must be accepted as true, and all of the allegations in the complaint must be viewed in the light most favorable to the plaintiff." *Id.* at 386. Also, the court may consider only matters stated within the complaint itself. An appellate court is in the same position as the trial court to rule on a motion to dismiss. Thus, the appellate court must determine whether the plaintiff has pleaded facts that, if true, are sufficient to support each claim asserted in the complaint. *Id.*

## III. Issue Preclusion and Claim Preclusion

McLane contends that its complaint is not barred by either issue preclusion or claim preclusion and that the trial court's dismissal of the complaint was therefore erroneous. We agree.

■ Issue preclusion and claim preclusion are similar defenses that preserve judicial resources by preventing the relitigation of stale claims. *Dave Peterson Elec., Inc. v. Beach Mountain Builders, Inc.*, 167 P.3d 175, 176 (Colo.App.2007).

■ The doctrine of claim preclusion operates as a bar to a second action on the same claim litigated in a prior proceeding when there is (1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity of or privity between parties to the actions. *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005). Claim preclusion serves the dual purposes of protecting litigants from the burden of relitigating the same issue with the same party or his or her privy and of promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Wall v. City of Aurora*, 172 P.3d 934, 937 (Colo.App.2007). Claim preclusion bars not only the claims actually litigated in the first proceeding, but also those that could have been litigated. *Lobato v. Taylor*, 70 P.3d 1152, 1165 (Colo.2003).

■ Issue preclusion prohibits the relitigation of issues actually litigated in the first proceeding. Issue preclusion applies when (1) the issue in the second proceeding is identical to an issue actually and necessarily adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 831 (Colo. 1991).

■ "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); *accord Wall*, 172 P.3d at 937.

■ Issue preclusion "is broader than [claim preclusion] in that it applies to a cause of action different from that involved in the original controversy. It is narrower, however, in that it does not apply to matters which could have been litigated but were not." *Pomeroy v. Waitkus*, 183 Colo. 344, 350, 517 P.2d 396, 399 (1973).

Initially, we observe that the trial court conflated the requirements of issue preclusion with those of claim preclusion. Although the trial court properly set forth the elements of issue preclusion in its order, to evaluate the first prong of the issue preclusion test it then relied on cases involving *claim preclusion*, specifically, *Holnam, Inc. v. Industrial Claim Appeals Office*, 159 P.3d 795 (Colo.App.2006); *Camus v. State Farm Mutual Automobile Insurance Co.*, 151 P.3d 678 (Colo.App.2006); and *Qual–Med, Inc. v. Rocky Mountain Hospital & Medical Service*, 914 P.2d 419 (Colo.App.1995). Thus, instead of determining whether the issue here was identical to the issue actually and necessarily adjudicated in *McLane I*, the trial court focused on whether the instant claim for relief was based on the same injury asserted in *McLane I. See Farmers High Line*

*Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 199 (Colo.1999) (in analyzing the identity of claims for relief, the inquiry is not focused on the specific claim asserted or the name given to the claim; instead, the "same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies" (citing *State Eng'r v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo.1989))).

In focusing upon the injury, the trial court conducted a hybrid analysis of issue preclusion and claim preclusion. The parties have cited no cases, and we have found none, sanctioning this type of hybrid analysis. We therefore decline to employ such an analysis.

After review of the record, briefs, and contentions of the parties, we conclude that McLane's claims do not fit within the parameters of either claim preclusion or issue preclusion. Although the doctrines are designed to create efficiency and to thwart piecemeal or redundant litigation, the doctrines are exceptions to the general principle that litigants should have their day in court, and they must be applied strictly according to their rules.

In *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), the United States Supreme Court explained the application of claim preclusion and issue preclusion in the context of tax claims. The Court held that the doctrine of claim preclusion did not bar the Commissioner of Internal Revenue from relitigating a tax issue that was identical to one previously decided in a case between the same parties, involving the same contract, but involving different tax years. *Sunnen*, 333 U.S. at 598, 68 S.Ct. 715. The Court also held that issue preclusion did not apply because a line of cases, decided after the resolution of the previous action, had sufficiently changed the legal climate surrounding the issue at hand, and application of the law currently in effect in light of that subsequent line of cases might have produced a result different from that reached in the previous action. *Id.* at 600–07, 68 S.Ct. 715.

The Court explained that, although the doctrine of claim preclusion does not apply to tax litigation involving different tax years, the doctrine of issue preclusion applies to tax litigation involving different tax years, but "only as to those matters in the second proceeding which were actually presented and determined in the first suit." *Id.* at 598, 68 S.Ct. 715. Issue preclusion, therefore, "operates ... to relieve the government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status.'" *Id.* at 599, 68 S.Ct. 715 (quoting *Tait v. W. Maryland Ry. Co.,* 289 U.S. 620, 624, 53 S.Ct. 706, 77 L.Ed. 1405 (1933)). However, the Court further explained that even if a taxpayer secures a judicial determination of a particular tax question, "a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes." *Id.*

The Court provided the following analysis of the application of the doctrine of issue preclusion to tax cases:

[Collateral estoppel or issue preclusion] is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.

And so where two cases involve income taxes in different taxable years, [issue preclusion] must be used with its limitations carefully in mind so as to avoid injustice. *It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.* If the legal matters determined in the earlier case differ from those raised in the second case, [issue preclusion] has no bearing on the situation. And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive....

Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. *And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change.* But if the relevant facts in the two cases are separable, even though they be similar or identical, [issue preclusion] does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding.... *Before a party can invoke the [issue preclusion] doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment.*

*Id.* at 599–602, 68 S.Ct. 715 (emphasis added; citations and footnote omitted).

Although the Supreme Court's opinion dealt with personal income tax, we find that its reasoning is equally applicable to OTP excise tax appeals. Other states likewise have applied its reasoning to other types of tax cases. *See, e.g., Dep't of Revenue v. Hoover, Inc.,* 993 So.2d 889 (Ala.Civ.App. 2007) (sales tax); *State v. Delaney's, Inc.,* 668 So.2d 768 (Ala.Civ.App.1995) (ad valorem tax); *State v. Baker,* 393 P.2d 893 (Alaska 1964) (license fees or taxes); *Irby Constr. Co. v. Ariz. Dep't of Revenue,* 184 Ariz. 105, 907 P.2d 74 (Ct.App.1995) (transaction privilege tax); *Pepin v. City of Danbury,* 171 Conn. 74, 368 A.2d 88 (1976) (real estate taxes); *Conn. Light & Power Co. v. Tax Comm'r,* 169 Conn. 58, 362 A.2d 958 (1975) (gross earnings tax); *Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Servs.,* 273 Ga. 175, 538 S.E.2d 746 (2000) (ad valorem tax); *Colvin v. Story County Bd. of Review,* 653 N.W.2d 345 (Iowa 2002) (property tax); *Weaver v. Prince George's County,*

34 Md.App. 189, 366 A.2d 1048 (Ct. Spec.App.1976) (local multifamily occupancy tax), *aff'd*, 281 Md. 349, 379 A.2d 399 (1977); *A & H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544 (Minn.2000) (sales tax); *Care Instit., Inc.-Maplewood v. County of Ramsey*, 576 N.W.2d 734 (Minn.1998) (property tax); *SportsTicker Enters., L.P. v. Div. of Employment Sec.*, 961 S.W.2d 909 (Mo.Ct. App.1998) (unemployment compensation tax); *Ainsworth v. City of Claremont*, 108 N.H. 55, 226 A.2d 867 (1967) (property tax); *Blair v. Taxation Div. Dir.*, 225 N.J.Super. 584, 543 A.2d 99 (Ct.App.Div.1988) (sales and use tax); *Brae Assocs. v. Park Ridge Borough*, 17 N.J.Tax 187 (Tax Ct.1998) (property tax), *aff'd*, 19 N.J.Tax 306 (N.J.Super.Ct.App.Div.2001); *Group Health Inc. v. Tax Com'n of City of New York*, 93 A.D.2d 730, 461 N.Y.S.2d 28 (App.Div.1983) (property tax); *Hubbard Press v. Tracy*, 67 Ohio St.3d 564, 621 N.E.2d 396 (1993) (property tax); *Union Oil Co. v. Bd. of Equalization*, 913 P.2d 1330 (Okla.1996) (ad valorem tax); *Jones v. Dep't of Revenue*, 2004 WL 603439 (Or. Tax Ct. Magistrate Div. No. TC–MD 030991 C, Mar. 26, 2004) (unpublished decision) (estimated tax), *aff'd*, 18 Or. Tax 90, 2004 WL 2850137 (Or. Tax Reg. Div.2004); *Hershey's Mill Homeowner's Ass'n v. Chester County*, 862 A.2d 146 (Pa. Commw.Ct.2004) (property tax); *Sabow v. Pennington County*, 500 N.W.2d 257 (S.D. 1993) (property tax); *Mountain States Tel. & Tel. Co. v. Salt Lake City*, 596 P.2d 649 (Utah 1979) (franchise fee and utility revenue tax).

■ Here, the Department's claim preclusion argument fails for want of identity of the cause of action. *McLane I* involved refund requests of OTP excise taxes paid during various periods between 1990 and 2001. The present suit involves only OTP excise taxes paid during various periods between January 1, 2002 and December 31, 2004. Suits in different tax years do not provide the same cause of action for claim preclusion purposes. *See Sunnen*, 333 U.S. at 598, 68 S.Ct. 715.

■ With respect to issue preclusion, the parties only dispute the first element— whether the issue in this case is identical to

the issue actually litigated and necessarily adjudicated in *McLane I*. Therefore, we address only that element.

■ To satisfy the first element of issue preclusion, the issue to be precluded must be identical to an issue actually litigated and necessarily adjudicated in the prior proceeding. *Grynberg v. Arkansas Oklahoma Gas Corp.*, 116 P.3d 1260, 1263 (Colo. App.2005). For the issue to have been actually litigated, the parties must have raised it in a prior action. *Id.* "A legally raised issue is one that a party, by appropriate pleading, asserts through a claim or cause of action against the other." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85 (Colo. 1999). Once the issue is properly raised, it must be submitted for determination and actually determined by an adjudicatory body. *Id.*

An issue is necessarily adjudicated for purposes of applying issue preclusion when a determination on that issue was necessary to a judgment. *Id.* at 86; *Grynberg*, 116 P.3d at 1264. "[I]ssues that were actually litigated and decided, but were not necessary to the final outcome of the case, are *not* subject to [issue preclusion] in a future case." *Bebo Constr. Co.*, 990 P.2d at 86 (emphasis in original); *see also Michaelson v. Michaelson*, 884 P.2d 695, 701–02 (Colo.1994) ("An issue is necessarily adjudicated when the determination of an issue was necessary to a judgment."); *People ex rel. Gallagher v. Dist. Court*, 666 P.2d 550, 554 (Colo.1983) (refusing to give preclusive effect to a previous decision upholding the competency of testimony, when the evidence was subsequently excluded on relevance grounds); Restatement (Second) of Judgments § 27 cmt. h. (1982) ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues ... is not precluded.").

The Department contends that McLane's argument that the OTP tax statutes are unconstitutionally vague and violate equal protection principles is essentially a subset of the equal protection argument raised and adjudicated in *McLane I*. McLane argues that the issue raised here was not adjudicated in *McLane I*, and therefore, the issues in

the two cases are not identical. We agree with McLane and conclude that the issues McLane now seeks to raise are not precisely the same as those actually litigated and necessarily adjudicated in *McLane I*.

The instant case concerns whether the OTP statutes, as construed by *McLane I*, violate the Equal Protection Clause of the Fourteenth Amendment because they are unconstitutionally vague and result in non-uniform application of the OTP excise tax by imposing the tax on similarly situated tax-liable distributors at different points in the distribution chain, regardless of whether the sales were made out of state or in state. For example, based on *McLane I's* interpretation of the OTP tax statutes, Sales, like McLane, could also be a "tax-liable distributor" with respect to the sales to McLane. Therefore, because McLane and Sales are both tax-liable distributors subject to the OTP excise tax, the Department could impose the tax at different points in the supply chain, which would affect the "manufacturer's list price" as defined in section 39–28.5–101(3), which, in turn, affects the tax base. McLane asserts that the OTP tax statutes have the "potential disadvantage of having the tax base and ultimately the tax decided at the discretion of the Department so that two identical products distributed through two functionally identical chains of distribution may bear dramatically different tax burdens." No such issue was decided in *McLane I*. Rather, the sole issue adjudicated in *McLane I* was whether the OTP tax statutes discriminated against interstate commerce in violation of the Commerce Clause. McLane asserted that the OTP tax scheme discriminated against interstate commerce by creating an "inexorable pressure" on out-of-state businesses to move into the state to "take advantage of the overall OTP tax benefit." Specifically, *McLane I* focused on McLane's alleged disadvantage in purchasing product from an out-of-state distributor, which did not have the advantage of a lower tax base. Therefore, although this case and *McLane I* concern the discriminatory nature of the OTP tax statutes in violation of the Equal Protec-

tion Clause, the equal protection claim in this case and the equal protection claim adjudicated in *McLane I* are distinct.

We are aware of no precedent—and the Department has cited none—suggesting that a prior decision addressing the constitutionality of a statute bars consideration of a later challenge, on different constitutional grounds, under the doctrine of issue preclusion. In short, *McLane I* did not "actually and necessarily" determine the same issues raised by McLane's claim in this case, and therefore the trial court erred in concluding that it was precluded from considering and deciding those issues on the merits.

The order is reversed, and the case is remanded to the trial court for reinstatement of McLane's complaint.

FURMAN and PLANK *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.