The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 13, 2020

## 2020COA26

**No. 18CA1540, *IBM Corp. v. City of Golden* — Taxation — Municipalities — Sales and Use Tax; Judgments — Issue Preclusion**

A division of the court of appeals holds that IBM Corporation was not barred by issue preclusion from contesting sales and use taxes that were assessed by the City of Golden.  The division also holds that the prior judgment against IBM did not adjudicate whether IBM's tax accounting system was reliable, nor did the prior judgment adjudicate whether IBM's specific transactions were taxable.

COLORADO COURT OF APPEALS  **2020COA26**

---

Court of Appeals No. 18CA1540
City and County of Denver District Court No. 16CV30076
Honorable John W. Madden IV, Judge

---

IBM Corporation,

Plaintiff-Appellee,

v.

City of Golden, Colorado, a home-rule municipality; and Jeffrey A. Hansen, in his official capacity as Finance Director of the City of Golden,

Defendants-Appellants.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERGER
Fox and Lipinsky, JJ., concur

Announced February 13, 2020

---

Wheeler Trigg O'Donnell LLP, Hugh Q. Gottschalk, Pawan Nelson, Denver, Colorado, for Plaintiff-Appellee

Berg Hill Greenleaf Ruscitti LLP, Thomas E. Merrigan, Heidi C. Potter, Denver, Colorado, for Defendants-Appellants

¶ 1     After an audit, the City of Golden assessed sales and use taxes

against IBM Corporation for the 2003–2005 tax period.  Finding

that IBM did not meet its burden of proving that the assessment

was incorrect, the Jefferson County District Court (Jefferson court)

upheld the assessment of those taxes and a 50% penalty authorized

by the Golden Municipal Code (GMC).

¶ 2     Golden then performed a second audit for later tax years.  This

time, IBM provided Golden with more documentation and greater

access to its tax records.  Still, Golden assessed sales and use taxes

that IBM contested.  On appeal to the district court again, but this

time in Denver District Court (Denver court), IBM largely prevailed.[1]

The court found that most of the transactions that IBM challenged

were not taxable under the GMC.

¶ 3     The central issue in this appeal is whether, under the doctrine

of issue preclusion, the Jefferson court order barred IBM from

litigating the taxability of its transactions from the later audit

period.  Like the Denver court, we conclude that issue preclusion

---

[1] Jeffrey A. Hansen was also a party to that appeal, as he is now in
this court.  He is named in his official capacity as the Finance
Director of Golden.

does not apply, so we affirm the district court's order, except that we remand for the imposition of the lesser 10% penalty and interest under the GMC.

## I.  Background

¶ 4    IBM provides information technology services to Xcel Energy Services, Inc., at Xcel's facility in Golden, under an "Information Technology Services Agreement."  The parties agree that Xcel pays IBM for three types of transactions under the agreement: fixed management fees, variable charges, and pass-through charges.

¶ 5    Golden audited IBM for the tax period from 2003–2005 (the first audit) regarding IBM's transactions with Xcel.  The city's auditor concluded that IBM was not providing information that detailed which specific transactions, including transactions classified as fixed management fees and variable charges, were taxable, so the auditor estimated IBM's tax liability.  Exercising review under section 39-21-103, C.R.S. 2019, the Colorado Department of Revenue (DOR) upheld this estimate and imposed a 50% penalty on IBM for being delinquent without good cause.  This penalty is authorized by the GMC, §§ 3.08.010(a), 3.08.030.

¶ 6 IBM appealed to the Jefferson court, which upheld the assessment and the penalty. The court found that IBM had failed to meet its burden of proving that the assessed taxes were unauthorized by the GMC. IBM tried to prove that it was not subject to Golden's taxes with testimony from an expert whom IBM hired to conduct his own sales and use tax audit, but the court found that the expert was unreliable for a host of reasons. One reason was that the expert treated a number of transaction classifications, including fixed management fees and variable charges, as containing only nontaxable transactions, but the court found that those classifications contained taxable and nontaxable transactions. The court also admonished IBM for repeatedly failing to provide Golden with documents it requested. A division of this court upheld the Jefferson court's judgment on appeal. *IBM Corp. v. City of Golden*, (Colo. App. No. 11CA0367, Mar. 8, 2012) (not published pursuant to C.A.R. 35(f)).

¶ 7     Meanwhile, Golden audited IBM for tax years 2006–2008 (the second audit) and then 2009–2012 (the third audit).[2] The record demonstrates, and the Denver court found, that IBM was more cooperative this time. For instance, IBM hosted the auditor at its offices in Connecticut for three days so he could review IBM's tax processes and systems. The auditor noted that IBM's tax department was "extremely helpful and very courteous and professional." And IBM presented evidence that during this round of auditing, it provided substantially more documentation to Golden and was more responsive to Golden's requests.

¶ 8     Nevertheless, Golden's auditor concluded that he could not render a complete and accurate tax assessment because IBM was not separately identifying the taxable and nontaxable components of certain transactions. The auditor issued tax assessments, again based on estimates.

¶ 9     IBM appealed those assessments to the Finance Director of Golden, Jeffrey A. Hansen, and then to the DOR, losing both

---

[2] The third audit was never completed because the auditor was retiring. The auditor's superiors directed him to issue the assessment for the third audit period based on information from the second audit period.

appeals.  The DOR further found that IBM was again delinquent without good cause in paying sales and use taxes, so it imposed the 50% penalty and interest.

¶ 10    Then IBM appealed to the Denver court.  At the time of trial, the tax assessments totaled $2,592,817.66 for the second audit period and $3,492,418.29 for the third audit period.  IBM's complaint alleged that the assessments were erroneous because they improperly imposed sales and use tax on services and transactions that were not subject to Golden's tax.

¶ 11    Golden moved for partial summary judgment, arguing that the doctrine of issue preclusion barred relitigating (1) whether IBM had a reliable "tax accounting system" and (2) whether the variable charge and fixed management fee classifications contained any nontaxable transactions.  The Denver court denied the motion in a written order.

¶ 12    On Golden's first argument, the court reasoned that the "documents IBM provided Golden in the instant case and whether those documents itemized the transactions sufficiently for a determination of taxability goes to the essence of this issue . . . and the extent of the documentation produced by IBM remains a factual

issue." The court also found that Golden did not "specifically identify the documentation produced and how it is essentially the same as those produced in the previous litigation." Addressing Golden's second preclusion argument, the court explained that the Jefferson court order found that *some* of the transactions under the agreement were taxable, but that the order did not provide a specific listing identifying which ones.

¶ 13 For these reasons, the Denver court concluded that issue preclusion did not prevent IBM from litigating the taxability of its transactions at issue in the second and third audits.

¶ 14 The case proceeded to a bench trial. By statute, because this was an appeal from a DOR determination, the Denver court tried the case de novo. § 39-21-105, C.R.S. 2019.

¶ 15 After the close of evidence, in a lengthy and well-reasoned order, the Denver court again concluded that IBM was not barred by issue preclusion from challenging the taxability of specific transactions. Next, the court found that IBM classified any taxable transactions as pass-through charges, not fixed management fees or variable charges. Thus, the court found that the specific transactions that were classified as fixed management fees or

6

variable charges were not taxable.  Finally, the court found that IBM owed $32,896.13 stemming from certain pass-through transactions.  Neither party appeals this portion of the judgment.

¶ 16    In a post-trial motion under C.R.C.P. 59, Golden asked the district court to assess a 10% penalty and 1% per month interest on the $32,896.13 award, as required by section 3.08.010(a) of the GMC.  The 10% penalty and interest are required on any outstanding taxes of a delinquent taxpayer under section 3.08.010(a) of the GMC.  IBM agreed that it was liable for the 10% penalty and interest, but the district court did not rule on the motion within the sixty-three-day time period under C.R.C.P. 59(j), so the motion was deemed denied.[3]

## II.    Analysis

### A.    Issue Preclusion

¶ 17    Golden argues that the Denver court erred by failing to give preclusive effect to the Jefferson court order.  "Issue preclusion is a

---

[3] At oral argument, IBM again agreed that Golden was entitled to the 10% penalty and interest on the taxes upheld by the Denver court.

question of law that we review de novo." *Stanton v. Schultz*, 222 P.3d 303, 307 (Colo. 2010).

¶ 18     Issue preclusion prevents relitigation of a legal or factual matter that has been decided in a prior proceeding. *McLane W., Inc. v. Dep't of Revenue*, 199 P.3d 752, 757 (Colo. App. 2008). It applies when

> (1) the issue in the second proceeding is identical to an issue actually and necessarily adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* (citing *City & Cty. of Denver v. Block 173 Assocs.*, 814 P.2d 824, 831 (Colo. 1991)). Issue preclusion can apply in tax cases. *Id.* at 758.

¶ 19     But in interpreting federal income tax statutes, the United States Supreme Court has noted that courts should be careful when applying issue preclusion to tax cases. *Comm'r v. Sunnen*, 333 U.S. 591, 597–600 (1948). The Court reasoned that issue preclusion should not be used to prevent a taxpayer from

challenging tax assessments in later years when circumstances have changed since a prior judgment. *See id.* at 599–601. Issue preclusion "is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers." *Id.* at 599.

¶ 20 While we are not bound by *Sunnen,* the Supreme Court's analysis addressing the limits of issue preclusion in tax cases is persuasive. Other states have likewise applied *Sunnen* to state tax cases. *McLane,* 199 P.3d at 758–59 (listing cases).

¶ 21 Here, the parties dispute only the first element of issue preclusion — whether issues in the second proceeding are identical to issues actually and necessarily adjudicated in a prior proceeding. Golden first argues that the Jefferson court found that IBM's entire "tax accounting system" was unreliable for calculating IBM's tax liability, so IBM was precluded from arguing that any components of its tax accounting system were reliable in the Denver district court. The record does not support this argument, so we reject it.

¶ 22 Nowhere in the Jefferson court order does the court make a broad finding on the reliability of IBM's "tax accounting system." In

fact, nowhere in the Jefferson court order does the phrase "tax accounting system" appear.

¶ 23 Rather, the Jefferson court order relied both on IBM's failure to produce the documents necessary for determining the corporation's tax liability and on the unreliability of IBM's expert. In support of the court's finding that IBM's expert was unreliable, the Jefferson court noted several *components* of IBM's accounting system that it found unreliable, which the expert had relied on in his analysis. Because the Jefferson court never found that IBM's entire tax accounting system was unreliable, IBM was not precluded in the Denver case from arguing that it provided reliable tax information to Golden, nor was IBM precluded from using its tax information, as it did, to argue that certain transactions were not taxable.

¶ 24 Moreover, the facts found by the Denver court illustrate why *Sunnen*'s warning regarding the unrestricted application of issue preclusion to tax cases is well founded. Under *Sunnen*, it would be improper to conclude that a taxpayer's intransigence in one tax period forecloses the possibility that the taxpayer kept better records and provided more documentation in later tax periods.

Here, the district court found that during the second audit, IBM was cooperative, provided substantially more information than it provided during the first, and even brought Golden's auditor to the corporation's headquarters in Connecticut. These findings support our conclusion, and the Denver court's conclusion, that issue preclusion was inappropriate on the issue of documentation and access provided by IBM.

¶ 25 Golden next contends that IBM was precluded from arguing that its purchase and sales journals were a reliable basis for assessing tax liability. Again, the record does not support this argument.

¶ 26 The Jefferson court never made a finding on the reliability of purchase and sales journals. The term "purchase and sales journals" appears only once in the Jefferson court order — and not in the sections of the record cited by Golden for this supposed finding — when the court discussed the documents that Golden requested. The last time that the Jefferson court order mentioned the documents requested by Golden, which would seemingly include the purchase and sales journals, was in the court's admonition that "IBM still had not provided the information

11

requested." So, as best we can tell, there is no indication that these journals were ever provided to Golden or the court.[4] Because the Jefferson court did not make a finding on the purchase and sales journals' reliability, IBM was not precluded from offering them as evidence of its tax liability, and the Denver court permissibly could find, as it did, that the journals were reliable for that purpose.

¶ 27 Golden also contends that IBM was precluded from arguing that any transactions classified as variable charges or fixed management fees were not taxable because the Jefferson court found that some of those charges were taxable. We disagree.

¶ 28 In the Denver court, IBM argued that several specific transactions, which were classified as variable charges or fixed management fees, were not taxable. There is little or no detail in the Jefferson court order that defines which particular transactions gave rise to sales and use tax liability. Instead, the Jefferson court

---

[4] Golden repeatedly cites footnote seventeen of the order for the Jefferson court's finding on the reliability of the journals. But there, the court discussed how "data feeds" were not provided to the city in an understandable format. We do not know what "data feeds" refer to. Absent any record support that data feeds are synonymous with purchase and sales journals, the Jefferson court's judgment did not actually or necessarily decide that the journals were unreliable.

order noted that "some" fixed management fees and variable charges "collected pursuant to the ITS Agreement were taxable in the City." Because the Jefferson court order did not specify which transactions were taxable, IBM was not precluded in the second case from arguing that specific transactions were not.

¶ 29    For these reasons, we conclude that the Denver court correctly rejected the application of issue preclusion and correctly allowed IBM to challenge the tax assessments on their merits.

¶ 30    Golden does not otherwise challenge the district court's findings or conclusions, except as discussed below, so we do not review them further.

### B.    C.R.C.P. 37(a) Sanctions

¶ 31    Golden challenges the district court's C.R.C.P. 37 ruling that precluded Golden from presenting evidence on the taxability of IBM's software maintenance agreements. The court found that Golden had failed to disclose this legal theory in response to IBM's discovery request, IBM did not have sufficient notice of the argument, and IBM was prejudiced by the nondisclosure.

¶ 32    We review C.R.C.P. 37 sanctions for an abuse of discretion. *Sheid v. Hewlett Packard*, 826 P.2d 396, 399 (Colo. App. 1991). The

trial court is generally in the best position to determine what sanctions are appropriate when a party fails to fully answer discovery requests. *See Kallas v. Spinozzi*, 2014 COA 164, ¶ 19.

¶ 33     Golden contends that IBM had notice that Golden would argue that the software maintenance agreements were taxable because they were a subject of the Jefferson court litigation, IBM's witnesses discussed software maintenance agreements on direct examination, and Golden argued that software maintenance agreements were taxable in its motion for summary judgment.[5]

¶ 34     The Denver court considered Golden's preserved contentions. The court had the broad discretion to conclude, notwithstanding Golden's contentions, that IBM was prejudiced by Golden's nondisclosure and that the appropriate sanction was to prohibit Golden from presenting evidence on its undisclosed argument. Therefore, we do not disturb the Denver court's C.R.C.P. 37 ruling.

---

[5] The argument that IBM's witnesses discussed software maintenance agreements was not made to the Denver court, so we do not address it further. *Russell v. First Am. Mortg. Co.*, 39 Colo. App. 360, 363, 565 P.2d 972, 975 (1977) (holding that a party on appeal may not allege error on grounds that were not considered by the trial court).

14

### C. Tax Penalties Under The Golden Municipal Code

¶ 35 Lastly, Golden asks for the reimposition of the 50% penalty if we reverse the district court's ruling on issue preclusion. Because we do not, we uphold the Denver court's determination that the 50% penalty is unwarranted.

¶ 36 But in the alternative, Golden asks us to remand for the imposition of the mandatory 10% penalty, with 1% per month in interest. IBM confessed Golden's C.R.C.P. 59 motion regarding the assessment of the 10% penalty and interest on the taxes that were found due by the district court, but the Denver court never ruled on the motion, so it was deemed denied. Accordingly, we remand the case to the Denver court and instruct the court to amend the judgment to include the required 10% penalty and interest on the taxes it upheld against IBM.

### III. Conclusion

¶ 37 The case is remanded to the district court to amend the judgment to include a 10% penalty on the amounts found due by the district court and to assess interest as provided by the GMC. In all other respects, the judgment is affirmed.

JUDGE FOX and JUDGE LIPINSKY concur.